UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY J. THUMAN,

                            Plaintiff,

      v.

TIMOTHY S. DEMBSKI,
SCOTT M. STEPHAN,
PRESTIGE WEALTH MANAGEMENT FUND, LP,
PRESTIGE WEALTH MANAGEMENT, LLC,
MID-ATLANTIC CAPITAL CORPORATION,
RELIANCE FINANCIAL ADVISORS LLC,

                            Defendants.
_____

**REPORT**
**and**
**RECOMMENDATION**


**13-CV-1087A(F)**

APPEARANCES:        WEBSTER SZANYI, LLP
                       Attorneys for Plaintiff
                       MICHAEL P. McCLAREN,
                       KEVIN T. O'BRIEN, of Counsel
                       1400 Liberty Building
                       Buffalo, New York  14202

                       LIPPES MATHIAS WEXLER FRIEDMAN LLP
                       Attorneys for Defendant Dembski
                       ERIC M. SOEHNLEIN,
                       DENNIS C. VACCO, of Counsel
                       50 Fountain Plaza, Suite 1700
                       Buffalo, New York 14202

                       K&L GATES, LLP
                       Attorneys for Defendant Mid-Atlantic Capital
                       JAMES P. ANGELO,
                       ERIC R.I. COTTLE, of Counsel
                       599 Lexington Avenue
                       New York, New York 10022


## JURISDICTION

This action was referred to the undersigned for all pre-trial matters by order of

Hon. Richard J. Arcara filed December 23, 2013 (Dkt. 9).  It is presently before the court

on Defendant Mid-Atlantic Capital Corporation's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed June 9, 2015 (Dkt. 56).

## BACKGROUND

Plaintiff, Gregory J. Thuman ("Thuman"), commenced this action by Complaint filed October 30, 2013, against Defendants Timothy S. Dembski ("Dembski"), Scott M. Stephan ("Stephan"), Prestige Wealth Management Fund, LP ("Prestige Fund" or "the Fund"), Prestige Wealth Management, LLC ("Prestige Mgm't."), Mid-Atlantic Capital Corporation ("Mid-Atlantic"), and Reliance Financial Advisors LLC ("Reliance"), alleging federal securities law violations based on Section 10(b) of the Exchange Act of 1934("Exchange Act") ("§ 10(b)") and § 20(a) of the Exchange Act ("§ 20(a)"), breach of fiduciary duty against Dembski and Reliance, and common law fraud against all Defendants.  A First Amended Complaint was filed May 17, 2014 (Dkt. 31) alleging a § 10(b) violation against Dembski ("Plaintiff's First Cause of Action"), a § 10(b) and Rule 10b-5 violation against Prestige Fund, Prestige Mgm't., Mid-Atlantic and Reliance ("Plaintiff's Second Cause of Action"), a § 20(a) violation against Mid-Atlantic, Prestige Mgm't., and Reliance ("Plaintiff's Third Cause of Action"), breach of fiduciary duty against Dembski and Reliance ("Plaintiff's Fourth Cause of Action"), common law fraud against all Defendants ("Plaintiff's Fifth Cause of Action"), breach of fiduciary duty against Dembski, Prestige Mgm't., and Prestige Fund ("Plaintiff's Sixth Cause of Action"), and negligence against Stephan, Prestige Mgm't., and Prestige Fund ("Plaintiff's Seventh Cause of Action").  By stipulations filed February 7, 2014 (Dkt. 20) and April 9, 2014 (Dkt. 29), Mid-Atlantic's time to answer was extended to May 7, 2014. As a result of Stephan's bankruptcy on June 3, 2014, further proceedings in the action

were stayed (Dkt. 38); on April 22, 2015, the local Bankruptcy Court permitted this action to proceed except as to Stephan and, accordingly, the stay in this action was vacated on May 19, 2015 (Dkt. 55).  On June 9, 2015, Mid-Atlantic filed its motion to dismiss Plaintiff's First, Third, and Fifth Causes of Action against Mid-Atlantic for failure to state a claim (Dkt. 56) ("Mid-Atlantic's motion"), together with Memorandum of Law In Support Of Defendant Mid-Atlantic Capital Corporation's Motion To Dismiss Plaintiff's Amended Complaint, Dkt. 56-1 ("Mid-Atlantic's Memorandum") attaching Exhibit A (Dkt. 56-1) ("Exh. A to Mid-Atlantic's Memorandum").  In opposition to Mid-Atlantic's motion, on June 22, 2015, Plaintiff filed the Declaration of Kevin T. O'Brien (Dkt. 57) ("O'Brian Declaration") together with Exhibits A – D (Dkt. 57-1) ("Exh(s). __ to O'Brien Declaration") and Memorandum Of Law (Dkt. 57-2) ("Plaintiff's Memorandum").  On July 6, 2015, Mid-Atlantic filed Reply Memorandum In Support Of Defendant Mid-Atlantic Capital Corporation's Motion To Dismiss Plaintiff's Amended Complaint (Dkt. 59) ("Mid-Atlantic's Reply").  Oral argument was deemed unnecessary.

## FACTS[1]

According to the First Amended Complaint, Dembski served as Plaintiff's tax advisor and tax preparer since March 2007.  Dembski, with knowledge of Plaintiff's financial condition, solicited Plaintiff to invest in the Prestige Fund, a general partnership private placement investment (hedge) fund managed by Dembski acting as the Managing Partner of Prestige Mgm't. which functioned as the general partner of the Fund.  Dembski's solicitation of Plaintiff included representations that the Prestige Fund was a safe investment with unlimited up-growth and a minimum risk of loss of 10% of an

---

[1]  Taken from the papers and pleadings filed in this action.

investor's principal.  Dembski's solicitation of Plaintiff continued until April 2012, when

Plaintiff executed subscription papers to facilitate Plaintiff's investment of $250,000, the

minimum required, in the Prestige Fund which sum was transferred by Plaintiff from his

employer's 401(k) retirement account payable to the Prestige Fund c/o of Stephan and

deposited, as Dembski had explained, in a TD America account in Plaintiff's name, until

September 12, 2012, when Reliance, which was listed as the Independent Advisor on

the account, purchased a subscription on behalf of Plaintiff in the Prestige Fund,

managed by Stephan.  Plaintiff completed the subscription form for the investment in

the Prestige Fund but did not complete the section which called for information

concerning Plaintiff's status as an accredited investor, which information was entered on

the form by Dembski.

Mid-Atlantic is a broker-dealer headquartered in Pittsburgh, Pennsylvania.

Between September 2011 and August 2013, Dembski was a registered representative

and employee of Mid-Atlantic and, since 2011, an employee of Reliance.  Stephan

served as a trader for the Prestige Fund and as of the date Plaintiff commenced this

action, was also an employee of Reliance and Wall Street Financial Group, Inc. of

Fairport, New York, a non-party.  Stephan had been a registered broker and investment

advisor until March 2011.  Following the purchase by Reliance of Plaintiff's $250,000

subscription in the Fund on September 12, 2012, Plaintiff received, on October 26,

2012, a quarterly report, *i.e.*, as of September 30, 2012, from the Prestige Fund or

Prestige Mgm't. stating Plaintiff's recent investment had earned $22,928.08,

representing a 9.17% gain.  In a subsequent report for the next quarter ending

December 31, 2012, Plaintiff received from either Prestige Fund or Prestige Mgm't.,

Plaintiff was informed that his investment had experience a $272,928.08 or 82.10% loss of value to $48,857.56. In response to Plaintiff's inquiry, Dembski informed Plaintiff he was "shocked" by the loss and later informed Plaintiff that Dembski's further investigation indicated the loss was caused by Stephan's actions as a "rogue trader." In February 2013, Plaintiff received $24,274.23 representing the then amount remaining in his Prestige Fund account which was closed in May 2013 when securities were transferred out of the account.

## DISCUSSION

In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*")). "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678). "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 670).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim will have 'facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

As indicated, Background, *supra*, at 2, the First Amended Complaint asserts Plaintiff's Second Cause of Action for liability against Mid-Atlantic under Section 10(b) of the Exchange Act of 1934 ("the Exchange Act") ("§ 10(b)") and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b-5 ("Rule 10b-5") based on *respondeat superior* and Plaintiff's allegation that Dembski, while acting as Mid-Atlantic's representative and employee, sold a subscription to Plaintiff in the Prestige Fund knowing such investment was unsuitable for Plaintiff, and Dembski's misrepresentation to Plaintiff that Plaintiff's investment was safe with unlimited upside and a limited, 10%, downside potential. Plaintiff does not allege Mid-Atlantic had direct involvement with Dembski's solicitation or the placement of Plaintiff's $250,000 with the Fund, *e.g.,* that Plaintiff maintained an account with Mid-Atlantic; however, Plaintiff alleges Mid-Atlantic was required by securities industry rules, *i.e.*, formerly NASD (National Association of Securities Dealers) Rule 3040, now FINRA (Financial Investment Industry Regulatory Authority) Rule 3280, to supervise Dembski's solicitation of investors to the Fund irrespective of the absence of any account by

Plaintiff maintained or serviced by Mid-Atlantic and that the purpose of Dembski's solicitation was to enrich both Dembski and Mid-Atlantic.

Plaintiff's Third Cause of Action alleges liability against Mid-Atlantic under Section 20(a) of the Exchange Act based on Plaintiff's allegations that Mid-Atlantic directly or indirectly controlled Dembski, knew or should have known Dembski committed fraud in soliciting Plaintiff's investment and failed to prevent Dembski's fraud in violation of § 10(b) and Rule 10b-5, and was a culpable participant in the fraud. Finally, Plaintiff's Fifth Cause of Action alleges common law fraud against Mid-Atlantic based on Dembski's alleged misrepresentations and the allegation that Mid-Atlantic had a duty to Plaintiff to avoid misrepresenting investment rights associated with the Fund and knew or should have known of Dembski's alleged fraudulent representations and failure to disclose material information regarding the "true nature" of the Fund and failed to prevent it.

1.     Rule 15(a)(3).

At the outset, Plaintiff contends Defendant's motion is untimely and therefore should be dismissed.  Plaintiff's Memorandum, Dkt. 57-2, at 3.  More specifically, Plaintiff points out that Plaintiff filed the First Amended Complaint on May 7, 2014 and therefore Mid-Atlantic's answer or motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in lieu of an answer therefore should have been filed, 14 days thereafter, or June 3, 2015, as required by Fed.R.Civ.P. 15(a)(3) ("Rule 15(a)(3)").  As a result, according to Plaintiff, Mid-Atlantic's motion to dismiss, filed June 9, 2015 (Dkt. 56) was six (6) days late, and should therefore be dismissed as untimely under Rule 15(a)(3).  Mid-Atlantic opposes arguing that although it requested the court extend the date for its answer or

motion to dismiss which Mid-Atlantic, in its letter to the court, filed May 11, 2015, Dkt. 53, stated it intended to file the court's order vacating the stay filed May 19, 2015, relating to the pending bankruptcy proceeding commenced by Defendant Stephan did not set a specific date for Defendant's response to the First Amended Complaint. In these circumstances Mid-Atlantic contends the 6-day late filing of the instant motion should be overlooked pursuant to Fed.R.Civ.P. 6(1)(b) ("Rule 6(1)(b)") which allows a court to consider a late filed motion where the party failed to timely file because of "excusable neglect." "'Excusable neglect' under Rule 6(1)(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of [the] movant.' Rather, it may encompass delays 'caused by inadvertence, mistake or carelessness,' at least when the delay was not long, there is no bad faith, there is no prejudice to the opposing party, and the movant's excuse has some merit." *Laboy v. Ontario County, New York*, 56 F.Supp.3d 255, 258 (W.D.N.Y. 2014) (quoting *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)) (further internal quotation marks omitted)). Here, the court's own order vacating the earlier stay should have, but did not, included a new date for Mid-Atlantic's expected motion to be filed. Mid-Atlantic's failure to note this oversight by requesting the court to amend its order and, as a consequence, its 6-day late filing may therefore properly be ascribed to inadvertence. Significantly, Plaintiff points to no indicia of bad faith on Mid-Atlantic's part or prejudice to Plaintiff if consideration of Mid-Atlantic's motion is allowed and, as can be discerned from the court's discussion of Mid-Atlantic's motion, the motion manifestly has merit. Based on these factors, the court finds Mid-Atlantic's failure to

strictly comply with Rule 15(a)(3) on this record was caused by excusable neglect, and Plaintiff's objections to consideration of Mid-Atlantic's motion is therefore without substance. The court therefore turns to the merits of Mid-Atlantic's motion.

2.    Section 10(b) and Rule 10b-5.

"To state a cause of action under Section 10(b) and Rule 10b-5, a plaintiff must plead that the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action cased plaintiff injury" in connection with a transaction involving a security. *Rombach v. Chang*, 355 F.3d 164, 169 n. 4 (citing *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996)). Plaintiff's § 10(b) and Rule 10b-5 claim is subject to Fed.R.Civ.P 9(b) requiring that in fraud claims "the circumstances constituting fraud . . . shall be stated with particularity." *Rombach,* 355 F.3d at 170. The Second Circuit also construes "Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Further, the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4b (2000) ") *et seq.* ("PSLRA), *see Cellular South Inc. v. Merrill, lynch, Pierce, Fenner & Smith, Inc.,* 516 Fed.Appx. 30, 31-32 (2d Cir. Mar. 19, 2013) (affirming district court's granting motion to dismiss individual investor's securities fraud claim for failure to plead with particularity the facts surrounding the asserted fraud), requires that for individual, and class action claims brought under the Exchange Act, *Rombach*, 355 F.3d at 170, "any securities fraud complaint alleging misleading statements or omission of material fact

must "specify each statement alleged to have been misleading, <u>the</u> <u>reason</u> <u>or</u> <u>reasons</u> <u>why</u> <u>the</u> <u>statement</u> <u>is</u> <u>misleading,</u> <u>and,</u> <u>if</u> <u>an</u> <u>allegation</u> <u>regarding</u> <u>the</u> <u>statement</u> <u>or</u> <u>omission</u> <u>is</u> <u>made</u> <u>on</u> <u>information</u> <u>and</u> <u>belief,</u> <u>the</u> <u>complaint</u> <u>shall</u> <u>state</u> <u>with</u> <u>particularity</u> <u>all</u> <u>facts</u> <u>on</u> <u>which</u> <u>that</u> <u>belief</u> <u>is</u> <u>formed</u>." *Rombach*, 355 F.3d at 170 (quoting 15 U.S.C. § 78u-4(b)(1) (underlining added)).[2]

    a.   <u>Materiality</u>.

"To state a claim in a private action under section 10(b) and Rule 10b–5, a plaintiff must prove: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission . . .; (5) economic loss; and (6) loss causation." *Richman v. Goldman Sachs Grp., Inc.* 868 F.Supp.2d 261, 271-72 (quoting *Stoneridge Inv. Partners, L.L.C. v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). "The requisite state of mind, or scienter, in an action under section 10(b) and Rule 10b-5 is 'an intent to deceive, manipulate or defraud.'" *In re GeoPharma, Inc. Sec. Litig*, 411 F.Supp.2d 434, 441 (S.D.N.Y. 2006) (quoting *Ganino v. Citizens Utils. Corp.*, 228 F.3d 154, 168 (2d Cir. 2000)). Rule 9(b) requires a plaintiff allege "'facts that give rise to a strong inference of fraudulent intent.'" *Richman*, 868 F.Supp.2d at 275 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). Although a claim pursuant to § 10b, 15 U.S.C. § 78j(b), is limited to the purchase or sale of "any security registered on a national securities exchange," claims under Rule 10b-5, 17 C.F.R. § 240.10b-5, may be brought against any misrepresentation of material fact or other fraudulent practice 'made in connection  with the purchase or sale of any security'" without regard to whether such security was

---

[2]   Unless indicated otherwise all underlining added.

registered.  *CompuDyne Corp. v. Shane*, 453 F.Supp.2d 807, 819 (S.D.N.Y. 2006)

(quoting 17 C.F.R. 240.10b-5).  Thus, a claim for unsuitability under § 10(b) and Rule

10b-5 requires proof that (1) the securities purchased were unsuited to the buyer's

needs; (2) defendant knew or reasonably believed the securities were unsuited to the

buyer's needs; (3) defendant recommended or purchased the unsuitable securities for

the buyer anyway; (4) that, with scienter, the defendant made material

misrepresentations (or, owing a duty to the buyer, failed to disclose material

information) relating to the suitability of the securities; and (5) the buyer justifiably relied

to its detriment on the defendant's fraudulent conduct.  *See Brown v. E.F.Hutton Group,*

*Inc.*, 991 F.2d 1020, 1031 (2d Cir. 1993) (citing *National Union Fire Ins. Co. v.*

*Woodhead*, 917 F.2d 752, 757 (2d Cir. 1990); *Clark v. John Lamula Investors, Inc.*, 583

F.2d 594, 600 (2d Cir. 1978).  Mid-Atlantic contends that Plaintiff has failed to plausibly

allege a § 10(b) or Rule 10b-5 violation against Mid-Atlantic based on Mid-Atlantic's

vicarious liability for Dembski's alleged fraudulent conduct in connection with selling

Plaintiff a limited partnership subscription in the Fund because Plaintiff has failed to

sufficiently allege a § 10(b) or Rule 10b-5 violation against Dembski in that Plaintiff

failed to make particularized allegations that Dembski acted with the scienter required

by Rule 9(b) and § 78u-4 of the PSLRA or made material misrepresentations to Plaintiff

in Dembski's solicitation.  Dkt. 56-1 at 7.  Even if Plaintiff's allegations satisfy these

particularized pleading requirements, Mid-Atlantic maintains that Plaintiff fails to

plausibly allege Dembski acted within the scope of his alleged employment with Mid-

Atlantic when Dembski engaged in the alleged fraudulent conduct in connection with

Plaintiff's investment in the Fund.  *Id.*

Here, Plaintiff's allegations of fraud are insufficient to state a claim pursuant to §

10(b) and Rule 10b-5 as a matter of law for two reasons.  First, Plaintiff's three alleged

misrepresentations are immaterial on their face.  Specifically, Plaintiff claims Dembski

misrepresented that the Fund "was a safe investment," First Amended Complaint  Dkt.

31 ¶ 16, "offered unlimited <u>upside</u> <u>potential</u>," *id*., and that the Fund "only exposed its

investors to the risk of losing 10% of their principal."  *Id.*  "[A]ssurances of success

generally are merely 'puffery,' and therefore not actionable under the securities laws."

*Metzner v. D.H. Blair & Co.*, 689 F.Supp. 262, 264 (S.D.N.Y. 1988) (dismissing

complaint because plaintiff failed to plead that defendant made material misstatements;

defendant's statements not actionable when he "guaranteed that the stocks . . . would

recover" and "assured [ ] plaintiff that the . . . losses would be recouped"); *First

Presbyterian Church of Mankato v. John G. Kinnard & Co.*, 881 F.Supp. 441, 444

(D.Minn. 1995) (immaterial statements included representations that the "investment

was a very low risk" and the "investment was safe because it was backed up by real

estate").  *In re Vivendi, S.A. Securities Litigation,* 838 F.3d 223, 245 (2d Cir. 2016)

(defendant not liable under PSLRA for securities fraud based on "puffery" (citing *San

Leandro Emergency Medical Group Profit Sharing Plan*, 75 F.3d at 811 (affirming

district court's dismissal of fraud claim based on statements by representatives and

principals of defendant corporation on which plaintiffs relied in deciding to purchase

defendant's stock because "puffery is not actionable")).  More specifically, Dembski's

alleged statement that the Fund "offered unlimited upside potential" is also immaterial

"puffery."  *See Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F.Supp 160, 163

(S.D.N.Y. 1986) ("When a broker calls a bond 'marvelous,' or says a stock is so 'red hot'

the investor <u>could</u> <u>not</u> <u>lose</u> or claims that his primary purpose is to make money for the customer, the reasonable investor is presumed to understand that this is nothing more than the 'common puff of a salesman,' not a material factual misstatement."  Statements regarding "optimism ha[ve] been held to be actionable <u>only</u> <u>when</u> <u>the</u> <u>speaker</u> <u>provided</u> <u>guarantees</u> or . . . specific statements of fact . . ..").  *Wang v. Bear Stearns Co., LLC*, 14 F.Supp.2d 537, 545 (S.D.N.Y. 2016); *see also Shamsi v. Dean Witter Reynolds, Inc.*, 743 F.Supp. 87, 91-92 (D.Mass. 1989) ("General representations as to a stock's future performance are not considered deceptive . . .;" immaterial statements held to include defendant's promises to "select low risk stocks that would increase in value.").  Nor is Dembski's alleged statement that the Fund "only exposed its investors to the risk of losing 10% of their principal" actionable under § 10(b) or Rule 10b-5, Dkt. 31 ¶ 16, as "optimistic predictions" about the potential risks of losing investment principal do not rise to the level of material misrepresentations.  *See Bogart v. Shearson Lehman Bros., Inc.*, 1995 WL 46399, at *2 (S.D.N.Y. Feb. 15, 1995) (holding that broker did not make a representation of material fact by stating in response to question regarding $600,000 maximum exposure, "[d]on't worry that will never happen" and that the investor would never lose $600,000).  *See San Leandro Emergency Med. Group Profit Sharing Plan*, 75 F.3d at 811 (statement that company "*should* deliver income growth consistent with its historically superior performance" were "relatively subdued comments" constituting only inactionable "puffery" (italics in original)).

Additionally, a careful perusal of the Plaintiff's fraud allegations demonstrate such allegations fail to meet the heightened particularity requirements applicable to Plaintiff's claim under the PSLRA.  For example, whereas Plaintiff asserts Dembski represented

no greater than 10% loss of principal potential for investments in the Fund, the PSLRA requires Plaintiff also state "the reason or reasons why the statement is misleading . . .." 15 U.S.C. § 78u-4(b)(1). Here, nowhere in the First Amended Complaint does Plaintiff offer any information plausibly compliant with this prerequisite. Thus, none of the alleged misrepresentations attributable to Dembski in connection with Plaintiff's investment in the Fund are plausibly material and Plaintiff's First Cause of Action pursuant to § 10(b) and Rule 10b-5 fails at the outset to state a claim upon which relief may be granted.

        b.    <u>Scienter</u>.

As required by the PSLRA, to survive dismissal of Plaintiff's § 10(b) and Rule 10b-5 claim, Plaintiff must also allege facts giving rise to a "strong inference of scienter," such that Dembski acted with "'a mental state embracing the intent to deceive, manipulate, and defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007) (quoting *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193-94 *1976), which inference of a defendant's intent must be more than merely "reasonable or permissible." *Id.* at 324. "A complaint will survive <u>only</u> if a reasonable person would deem the inference of scienter <u>cogent</u> and at least as compelling as any opposing inference one could draw from the fact alleged." *Id.* "In analyzing scienter, a court looks not just to inferences favoring the plaintiff, but must also take into account 'plausible, non-culpable explanations for the defendant's conduct.'" *Cox v. Blackberry Limited*, 660 Fed.Appx. 23, 24 (2d Cir. Aug. 24, 2016) (quoting *Tellabs, Inc.*, 551 U.S. at 324). *See also Indiana Public Retirement Systems v. SAIC, Inc.*, 818 F.3d 85, 93 (2d Cir. 2016) (plaintiff "therefore <u>must</u> <u>allege</u> <u>with</u> <u>particularity</u> <u>facts</u> that give rise to 'a strong inference' that . . .

[defendant]³ acted <u>consciously</u> and <u>recklessly</u> in omitting or misrepresenting financial information" (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 198 (2d Cir. 2009))).  A plaintiff can meet this "strong inference" pleading standard by "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995).  Plaintiff's First Cause of Action fails on both counts.

First, a fair reading of the First Amended Complaint fails to reveal any facts sufficient to establish that when soliciting Plaintiff's subscription in the Fund, Dembski had a motive to defraud.  To sufficiently allege a "motive" giving rise to a strong inference of scienter, a plaintiff must "assert a concrete and personal benefit to the [defendants] resulting from the fraud."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Simply alleging a "general motivation to act in one's own economic self-interest" will not suffice.  *Tabak v. Canadian Solar, Inc.*, 549 Fed.Appx. 24, 29 (2d Cir. 2013) (affirming dismissal of plaintiff's § 10(b) and Rule 10b-5 claims based, *inter alia*, on plaintiff's refusal to allege with sufficient particularity defendant's actions based on required degree of scienter). To satisfy the particularity requirement for scienter based on a motive to defraud "plaintiff must allege a unique connection between the [defendant's] fraud and the [benefit]" defendant sought to gain as a result.  *In re Gentiva Securities Litig.*, 971 F.Supp.2d 305, 334 (S.D.N.Y. 2013) (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 201 n. 6).  Here, the lone allegation relevant to this issue according to the First Amended Complaint is that Dembski's only

---

³  Unless indicated otherwise bracketed material added.

motivation for fraudulently inducing Plaintiff to invest in the Fund was "to enrich[ ] himself and the firms/entities for which he worked."  Dkt. 31 ¶ 34.  Such a generalized desire to enlarge his personal compensation based on Dembski's successful sale and management of Plaintiff's investment in the Fund fails as a matter of law to allege a "concrete and personal benefit" that arises from his "unique connection" to the alleged fraud as unless such benefits "represent a species of compensation <u>different</u> <u>from</u> <u>the</u> <u>one</u> ordinarily accumulated" by the alleged securities fraud defendant, they are insufficient to sustain plaintiff's burden to allege the required degree of scienter.  *See In re Openwave Sys. Sec. Litig.*, 528 F.Supp.2d 236, 249-50 (S.D.N.Y. 2007).  Significantly, Plaintiff does not allege Dembski,  Prestige Mgm't., or Reliance, the latter companies which Plaintiff alleges were controlled by Dembski, received any special compensation or benefit that differed from any such compensation or benefit Defendants could have expected from any similar investment in the Fund.  Accordingly, Plaintiff's allegation fails to establish a "strong inference" of scienter based on Dembski's "motive and opportunity" to commit the fraud by inducing Plaintiff to make an unsuitable investment in the Fund as Plaintiff alleges.  *See, e.g., Saltz v. First Frontier, LP,* 782 F.Supp.2d 61, 72 (S.D.N.Y. 2010) (plaintiff insufficiently pled motive to defraud by alleging defendants received fees based on a fund's net asset value because "[t]he desire to maintain high compensation in such circumstances does not constitute motive to defraud"); *In re Fannie Mae 2008 Sec. Litig.*, 742 F.Supp.2d 382, 403 (S.D.N.Y. 2010) (plaintiff failed to sufficiently allege scienter by stating that defendants "withheld information . . . allowing the [i]ndividual [d]efendants to be rewarded with abnormally large bonuses" because "the desire to earn management fees is a motive generally

possessed by . . . managers, and as such, does not suffice to allege a 'concrete and personal benefit' resulting from the fraud"). In this case, if as a result of Plaintiff's investment, Dembski received an unusually large commission or fee by purchasing Plaintiff's subscription in the Fund, Plaintiff has not attempted to allege such fact directly or even on information and belief, and Plaintiff does not contend otherwise. *See* Plaintiff's Memorandum, Dkt. 57-2 (*passim*). Plaintiff's contention that Dembski sold the investment to Plaintiff despite Dembski's alleged awareness that such investment was unsuitable for Plaintiff, Dkt. 57-2 at 15 (referencing Dkt. 31 ¶ 33) is equally deficient in that an essential element of a unsuitability claim is that in allegedly recommend an unsuitable investment to a plaintiff, "with scienter, the defendant made material misrepresentations . . . relating to the suitability of the securities." *Brown*, 991 F.2d at 1031 (affirming dismissal of class action based on alleged unsuitability as a "subset of the ordinary § 10(b) fraud claim" where defendants made oral representations that plaintiffs' investments in real estate investment limited partnership were "conservative" and involved "low risk" or "no risk" to the investors and plaintiffs failed to sufficiently raise issue of fact with regard to required element of plaintiffs' reliance). As discussed, Discussion, *supra*, at 9-14, in this case, Plaintiff's allegations under Plaintiff's First Cause of Action fail to plausibly allege Dembski made material fraudulent misrepresentations with the required degree of scienter in describing to Plaintiff the low – 10% risk of loss – level of investment risk in Plaintiff's purchase of a limited partnership in the Fund. As such, Plaintiff alleges an unsuitability claim that cannot avoid dismissal. *ECA, Local 134 IBEW Joint Pension Trust Co. of Chi.*, 553 F.3d at 199 (citing *Novak*, 216 F.3d at 308).

As a form of actionable scienter, "[d]eliberately illegal conduct" is limited to actual illegal conduct. *See CompuDyne Corp.*, 453 F.Supp.2d at 820. Plaintiff alleges no deliberately illegal misconduct by Dembski in connection with Plaintiff's investment. Even assuming Plaintiff did not qualify, as Plaintiff alleges, as an accredited investor, under Rule 506 of SEC Regulation D, 17 C.F.R. § 230.506 ("Rule 506"), Rule 506 permitted up to 35 non-accredited investors in the Fund. As relevant, Rule 506 required only that prior to accepting Plaintiff's investment in the Fund, on the issuance of a non-registered security, Dembski reasonably believed Plaintiff possessed "such knowledge and experience in financial and business matters that he is capable of evaluating the merits and risks of the prospective investment." 17 C.F.R. § 230.506(b)(2)(ii). Nowhere in the First Amended Complaint does Plaintiff allege Plaintiff was unable, based on Plaintiff's business and financial experience, to evaluate "the merits and risks of the prospective investment" in the Fund. *Id.* Further, in executing the Limited Partnership Agreement, Plaintiff certified Plaintiff understood that all partners in the Fund "share all losses, liabilities, or expenses" incurred by the Fund. *See* Exhibit A to Mid-Atlantic's Memorandum § 1.2.[4] Plaintiff does not argue otherwise. *Novak*, 216 F.3d 300, 308 (2d Cir. 2009). Plaintiff's scienter allegations are also deficient in that they fail to plausibly allege that in soliciting Plaintiff to invest in the Fund, Dembski engaged in "conscious misbehavior or recklessness," amounting to "an extreme departure from the standards of ordinary care . . . to the extent that the danger [of a possible risky or unsuitable

---

[4]  *See Chambers v. Time-Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated [in the complaint], the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (quoting *Int'l Audiotext Network, Inc. v. AT&T Co.*, 62 F.3d 69, 72 (2d Cir. 1995)); *see also Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (court permitted to consider, *inter alia*, defendant's offering memorandum where plaintiff failed to reference it in the complaint).

investment proposed by defendant] was either known to the defendant or so obvious that the defendant [if not a plaintiff] must have been aware of it." *Novak*, 216 F.3d at 308. Such "extreme departure from the ordinary standards of care" is shown by a "strong inference" of conscious misbehavior or recklessness when defendant (1) "engaged in deliberately illegal behavior;" (2) "knew facts or had access to information suggesting that [his] public statements were not accurate," or (3) "failed to check information [he] had a duty to monitor." *ECA, Local 134 IBEW Joint Pension Tr. of Chi.*, 553 F.3d at 199 (quoting *Novak*, 216 F.3d at 311).

Second, although the Second Amended Complaint does not explicitly assert Dembski acted with the required scienter based on reckless disregard of known facts suggesting Dembski's purported misrepresentations to Plaintiff regarding the risks associated with investing in the Fund, even assuming such allegations based on a liberal construction of Plaintiff's unsuitability claim, the First Amended Complaint is fatally deficient. To show Dembski acted recklessly Plaintiff must allege Dembski "knew facts or had access to information suggesting" Dembski's statements to Plaintiff regarding the Fund's unsuitability were inaccurate. "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information to indicate how it was inconsistent with the statements made." *In re Hardinge, Inc. Sec. Litig.,* 696 F.Supp.2d 309, 331 (W.D.N.Y. 2010) (plaintiff insufficiently pleaded recklessness by failing to point to specific data contradicting the defendant's public representations). Here, Plaintiff's allegations fail to reference any information to which Dembski had access that contradicted the statements Dembski allegedly made to Plaintiff in the course of selling to Plaintiff the

investment in the Fund.  In fact, nothing in the First Amended Complaint suggests, even remotely, that Dembski had any reason to believe the Fund would not perform as he stated or that Dembski had no good faith belief that but for Stephan's poor investment decisions during the following quarter, the Fund would have achieved the results Dembski represented to Plaintiff.

Nor does Plaintiff allege Dembski "fail[ed] to check information that [he] had a duty to monitor" by ignoring "red flags" or other "obvious signs of fraud" in the process of selling the investment to Plaintiff.  *See In re Merkin*, 817 F.Supp.2d 346, 357 (S.D.N.Y. 2011) (allegations that fund managers who invested with rogue hedge fund operator Bernie Madoff acted in reckless disregard of "red flags" indicative of Madoff's fraudulent Ponzi scheme relative to plaintiff's investment held insufficient to plausibly establish scienter and avoid dismissal based on recklessness on defendant's Rule 12(b)(6) motion to dismiss).  In the present case, the First Amended Complaint also fails to allege that Dembski overlooked obvious signs of fraud such as by Stephan, the alleged "rogue trader" (Dkt. 31 ¶ 30); indeed, Plaintiff alleges Plaintiff's Fund account initially realized a nine (9.17%) percent return, Dkt. 31 ¶ 27, despite the alleged improper trading strategy of Stephan who, according to Plaintiff, actually managed the Fund on behalf of Prestige Mgm't. (Dkt. 31 ¶ 30).  If Stephan's "rogue" trading threatened to drastically impair the value of Plaintiff's investment during the subsequent quarter, *i.e.*, October –December 2012, Plaintiff includes no allegation that Dembski was aware of or should have been aware that Plaintiff's account was being managed in such a way as to produce the drastic decline in value that Plaintiff suffered, even though Plaintiff knew Dembski controlled Prestige Mgm't. throughout the brief four-month period Plaintiff had

invested with the Fund. In all, Plaintiff's First Cause of Action fails to plausibly allege that Dembski engaged in material misrepresentations or omissions and acted with the "high degree of scienter" required to support Plaintiff's § 10(b) and Rule 10b-5 claim, and Mid-Atlantic's motion should be GRANTED on these grounds.

3.  Vicarious Liability.

Even assuming Plaintiff's First Cause of Action has sufficiently alleged Dembski acted fraudulently with scienter, Plaintiff's claim should be dismissed because Plaintiff has failed to plausibly allege Mid-Atlantic, as Dembski's broker-dealer, is vicariously liable for such investment fraud as alleged by Plaintiff. Specifically, Plaintiff asserts that because of an alleged employment relationship, Dkt. 31 ¶ 11 (FINRA Broker Check Report listed Dembski as a current employee of Mid-Atlantic, an assertion flatly denied by Mid-Atlantic, Dkt. 56-1 n. 2 ("Dembski was never an employee of MACC . . . he was an independent contractor")), and as an agent of Mid-Atlantic based on Dembski's status as a registered representative of Mid-Atlantic, Dkt. 31 ¶ 11, Mid-Atlantic is vicariously liable for Dembski's purported § 10(b) and Rule 10b-5 violations based on Plaintiff's unsuitability investment theory and common law principles relevant to the doctrine of *respondeat superior*. Dkt. 31 ¶¶ 40-42. Plaintiff also alleges and places substantial reliance on, Dkt. 57-5 at 6-8 (citing NASD Rule 3040),[5] Mid-Atlantic's obligation to "supervise Dembski's activities including the solicitation of Plaintiff with respect to the various Fund accounts (including Plaintiff's account) "maintained by Mid-Atlantic" as "required by securities industry rules, "regardless of whether the individual(s) solicited by Dembski [in this case, Plaintiff] were in fact customers of Mid-

---

[5]  FINRA was created in 2007 by a merger of the former NASD and NYSE. *Milliner v. Mutual Securities, Inc.*, ___ F.supp.3d ___, 2016 WL 4990516, at *3 n. 3 (N.D.Cal. Sept. 19, 2016) and former NASD Rule 3040 was adopted by FINRA without substantive changes in 2007 as Rule 3280. *Id.* at *5 n. 7.

Atlantic." Dkt. 31 ¶ 46. Plaintiff does not assert Mid-Atlantic's *respondeat superior* is predicated on any acts or omissions by Stephan[6] despite Plaintiff's allegation that "Mid-Atlantic knew or should have known" that Stephan lacked "proper qualifications to serve as a Chief Investment Officer of a private investment fund." Dkt. 31 ¶ 47. Plaintiff's *respondeat superior* theory as a ground for imposing § 10(b) and Rule 10b-5 liability upon Mid-Atlantic based on Dembski's actions in soliciting Plaintiff's investment in the Fund fail as a matter of law for several reasons.

First, even assuming, as required, on this Rule 12(b)(6) motion the truth of Plaintiff's allegation that during the relevant time period Dembski was a Mid-Atlantic employee, *respondeat superior* does not impose vicarious liability upon the employer unless the misconduct, whether negligent or intentional, giving rise to liability occurs during the scope of the employee's employment in furtherance of the employer's business. *See Marbury Mgm't., Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir. 1980); *Kirkman v. Astoria Gen. Hosp.*, 611 N.Y.S.2d 615, 616 (2d Dep't. 1994) (citing *Riviello v. Waldron,* 391 N.E.2d 1278, 1280-81 (N.Y. 1979) (citing *Mott v. Consumer's Ice Co.*, 73 N.Y. 543, 547 (1878))). Where the employee commits torts "solely for personal motives unrelated to the furtherance of the employers' business" no *respondeat superior* liability may be imposed on the employer. *Id.*[7] Moreover, imputations of liability arising from an employee registered representative's statement of a broker-dealer-employer against an employer-principal may only be based on the "conduct of the principal, not the agent." *Imburgio v. Toby*, 920 N.Y.S. 2d 43 (1st Dep't. 2011) (affirming dismissal of complaint

---

[6] The First Amended Complaint alleges no negligence claim against Dembski or Stephan, nor any negligent supervision claim against Mid-Atlantic.

[7] As both parties rely on New York law, *see* Dkt. 56-1 at 7-8; Dkt. 57-2 at 4, the court assumes the parties agree New York law applies to this issue.

which failed to allege "employee's car customizing venture was in furtherance of security dealer Wachovia's business and within the scope of the employee's employment as a registered representative [of the dealer]"); *see also FSC Sec. Corp. v. McCormick*, 630 So.2d 979, 986 (Miss. 1994) (in action seeking restitution of plaintiff's investment converted by defendant's registered representative judgment again reversed because broker-dealer [defendant] not vicariously liable for investment loss where investors had no contact with [defendant], made no effort to follow their investment through [defendant] and relied on and dealt only with [the registered representative], and defendant's representative had accepted the plaintiffs' investment funds on behalf of the investment fund established by the representative, not the broker-dealer defendant); *c.f. CompuDyne Corp.*, 453 F.Supp.2d at 825 (allegations that broker-dealer's wholly-owned subsidiary delegated to broker-dealer's general securities representative authority to act for broker-dealer in trading assets of subsidiary's hedge fund sufficient to allege claim that representative was agent of subsidiary for liability against subsidiary based on representative's alleged market manipulations securities fraud scheme).

While ordinarily the question of whether an employee's alleged misconduct occurs within the scope of his or her employment or in furtherance of the employee's illicit motives or purposes is a fact question, *Rivielle*, 391 N.E.2d at 303, where plaintiff's allegations are so patently deficient and as a result fail to satisfy the level of plausibility required to avoid dismissal, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (affirming dismissal of claims that were so deficient as to fail to raise right to relief above speculation), the court should not hesitate to grant a defendant's motion

to dismiss. Here, even upon a cursory reading the First Amended Complaint fails to meet that threshold requirement for Mid-Atlantic's liability based on Plaintiff's *respondeat superior* theory for several reasons. First, no allegation suggests Plaintiff's decision to invest in the Fund was influenced in any way by Dembski's status as a representative of Mid-Atlantic, in fact Plaintiff's allegations that Plaintiff eventually acquiesced to Dembski's importuning after several years (2007-2012) of declining Dembski's solicitations, Dkt. 31 ¶ 2, indicates Plaintiff did not rely on Dembski's relationship with Mid-Atlantic as Dembski's broker-dealer, or was even aware of Mid-Atlantic, in making his decision. Nothing in the First Amended Complaint even remotely suggests otherwise. Second, Plaintiff alleges no involvement by Mid-Atlantic in the creation or management of the Fund. Third, Plaintiff does not allege any communications he received from Mid-Atlantic suggested Mid-Atlantic had any role in supervising Dembski or that Mid-Atlantic at any time held or processed Plaintiff's investment in the Fund, instead Plaintiff makes clear the transaction was processed by Dembski through a TD Ameritrade "institutional account" which listed only Reliance as the "Independent Advisor" on the account. Dkt. 33 ¶¶ 23-24. Fourth, none of Plaintiff's allegations state, or even imply, Mid-Atlantic received any compensation or benefit as a result of Plaintiff's investment in the Fund or that Mid-Atlantic was even aware of Dembski's solicitation and the later purchase of Plaintiff's limited partnership account in the Fund prior to Dembski's solicitation and the transfer of Plaintiff's funds from the TD Ameritrade account into the Fund. Significantly, no allegation supports that the transaction required the clearing services of Mid-Atlantic as a broker-dealer as Plaintiff expressly states the transaction was processed by Reliance through its TD Ameritrade

account. The absence of such relevant facts support that Plaintiff was neither a regular nor occasional Mid-Atlantic customer, Mid-Atlantic had no involvement in the management of the Fund, and that Dembski acted solely in his private capacity as a representative of the Fund, not on behalf of Mid-Atlantic or as its representative in relation to the solicitation and management of Plaintiff's investment. *See Gordon v. Burr*, 506 F.2d 1080, 1085-86 (2d Cir. 1974) (broker-dealer-defendant not liable to plaintiff-investor under § 10(b) where defendant not in privity of contract with plaintiff, and plaintiff not one of defendant's regular customers, defendant did not manage plaintiff's transaction with other defendants and defendant's brokers did not act as defendant's representatives in connection with fraud alleged by plaintiff); *As You Sow v. AIG Fin. Advisors, Inc.*, 584 F.Supp.2d 1034, 1047 (M.D. Tenn. 2008) (*respondeat superior* applicable only where "acquisition and disposition of plaintiffs' assets were within the actual scope of the [broker's] duties as the defendants' agent"); *Asplund v. Selected Investments In Fin. Equities, Inc.*, 86 Cal.App.4[th] 26, 41 (Cal.App.Ct. 2000) (where defendant was not acting in his capacity as a registered representative of defendant broker-dealer, the plaintiff's investment was unrelated to any investment products offered by defendant through its registered representatives, and plaintiff's investment in corporate promissory notes competes with investment products defendant offered to public, defendant could not be vicariously liable to plaintiff under § 20(a) of the Exchange Act).

Plaintiff's assertion that Mid-Atlantic had duty to supervise Dembski pursuant to FINRA Rule 3280 ("Rule 3280" or "the Rule") which, according to Plaintiff, imposes *respondeat superior* liability for § 10(b) and Rule 10b-5 claims, Dkt. 31 ¶ 46; Dkt. 57-2 at

5-6 (referencing NASD Rule 3040, predecessor to FINRA Rule 3280), fares no better. Courts consistently hold that such rules create no private right of action and do not provide a basis to impose vicarious liability in actions under federal securities laws. Although FINRA (formerly NASD) has the "power to initiate a disciplinary proceeding against any FINRA member or associated person for violating any FINRA rule . . .," *Fiero v. Financial Industry Regulatory Auth., Inc.*, 660 F.3d 569, 572 (2d Cir. 2011), courts have repeatedly held that FINRA, and previously NASD, rules do not provide for a private right of action in connection with litigation of claims arising under federal securities laws. *See de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1311 (2d Cir. 2002) ("Courts therefore have sensibly declined to infer legal duties from internal 'house rules' or industry norms that advocate greater vigilance than otherwise required by law.") (citing cases); *In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) (Exchange Act does not provide a private cause of action for violation of stock exchange rules (citing cases)); *Richman v. Goldman Sachs Grp., Inc.*, 868 F.Supp.2d 261, 275 (S.D.N.Y. 2012) ("Courts, however, have cautioned against allowing securities fraud claims to be predicated solely on violations of NASD rules because such 'rules do not confer private rights of action.'" (quoting *Weinraub v. Glen Rauch Sec., Inc.*, 399 F.Supp.2d 454, 462 (S.D.N.Y. 2005) and citing caselaw)); *Tucker v. Janney Montgomery Scott, Inc.* 1997 WL 151509, at *3 (S.D.N.Y. Apr. 1, 1997) (same); *Jaksich v. Thompson McKinnon Sec. Litig.*, 582 F.Supp. 485, 500 (S.D.N.Y. 1984) (inappropriate for courts to enforce general obligations created by NASD Rule 405 (requiring members to supervise accounts diligently and avoid placing customers in unsuitable investments) because such rule "lacks the requisite precision in defining

rights and obligations to satisfy the *Colonial* standard *[Colonial Realty Corp v. Bache &*
*Co.,* 358 F.3d 178 (2d Cir.), *cert. denied*, 385 U.S. 817 (1966)], and adds little or nothing
to duties imposed by statute or by the common law (citing cases)).  *See also Wendt v.*
*Bent Pyramid Productions, LLC*, 970 N.Y.S.2d 138 (4th Dep't 2013) (defendant had no
duty to supervise registered representative as an independent contractor holding FINRA
rules do not impose "duty of care" sufficient to support private cause of action under
New York common law for negligent supervision (citing cases).  Further, although courts
have also held violations of FINRA rules may be relevant to claims of suitability of
investments, *see, e.g., Richman*, 868 F.Supp.2d at 275 n. 6 (citing caselaw), Rule 3280
requires a member to supervise an associated person's proposed private securities
transaction of which the member has received written notice, Rule 3280(b) and has
approved the person's participation in the proposed transaction, *id.*(c)(1)(A), by
"recording" the transaction on the members "books" and "supervising the person's
participation the transactions as if the transactions were executed on behalf of the
member."[8]  *Id.*(c)(2).  Here, significantly, the First Amended Complaint nowhere alleges
that Dembski, as a Mid-Atlantic registered representative, ever complied with Rule 3280
by providing Mid-Atlantic with written notice of the proposed solicitation of Plaintiff's
investment in the Fund, a private, *i.e.*, non-registered, securities transaction, nor does
Plaintiff allege that if such notice were provided that Mid-Atlantic approved the
transaction triggering Mid-Atlantic's potential duty, under the Rule, to supervise
Dembski's involvement in the solicitation and placement as if done on Mid-Atlantic's

---

[8]  *But see Milliner*, 2016 WL 4990516, at **3-4 (court may in negligence action to recover plaintiff's
losses, consider broker-dealer's common law duty to supervise investment advisory activities of its
registered representative under Rule 3280 where advisor informed broker-dealer of advisor's outside
advisory activities and broker-dealer approved such activities).

behalf.  Thus, even assuming the Rule provides a basis for *respondeat superior* liability against Mid-Atlantic as Plaintiff contends, Plaintiff has failed to plausibly allege such liability by asserting Mid-Atlantic had received written notice of the proposed transaction with Plaintiff and had approved it, as a ground for Plaintiff's First Cause of Action against Mid-Atlantic.  In any event, as the Plaintiff's reliance on the Rule seeks to create a basis of liability already available at common law the Rule is irrelevant to the question of Mid-Atlantic's potential vicarious liability based on the common law doctrine of *respondeat* superior for Plaintiff's § 10b-5 claims.  *See Jaksich*, 582 F.Supp. at 500 (securities industry rules which do not enlarge the scope of protection available under federal securities or common law not enforceable in private actions).  To enforce Rule 3280 as Plaintiff requests would be equivalent to accepting it as a basis of liability as if it created a private right of action in derogation of contrary prevailing judicial holdings in this circuit.[9]  Significantly, Plaintiff cites to no authority in support of Plaintiff's novel theory (that Rule 3280 imposes *respondeat superior* liability on a broker-dealer FINRA member) and the court's research reveals none.  Plaintiff's *respondeat superior* contention based on Rule 3280 (formerly NASD Rule 3040) is accordingly without merit. In sum, Plaintiff has failed to plausibly allege Mid-Atlantic is subject to Plaintiff's § 10(b) and Rule 10b-5 claims based on *respondeat superior*, and Mid-Atlantic's motion should be GRANTED on this ground.

4.    Plaintiff's Section 20 Claim.

In support of Plaintiff's Third Cause of Action alleging Mid-Atlantic's liability pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), Plaintiff asserts Mid-

---

[9]   The holding in *Milliner*, Discussion, *supra*, at 27, n. 8, is not inconsistent as in that case the court found Rule 3280 relevant to define defendant's scope of duty to supervise as a basis apparently for a common law claim, not as *respondeat superior* for a § 10(b) claim.

Atlantic possessed the power to "direct and control" Dembski and therefore "acted as a control person" of Dembski within the scope of § 20(a). More specifically, Plaintiff alleges Mid-Atlantic knew or should have known of Dembski's § 10(b) and Rule 10b-5 violations and "failed to take steps to prevent Dembski's violations and that Mid-Atlantic, together with Reliance and Prestige Mgm't. "were culpable participants in Dembski's fraudulent misconduct with respect to Plaintiff's investments and losses in the Fund. First Amended Complaint ¶¶ 52-56, 58. Section 20(a) extends joint and several liability for violations of § 10(b) and Rule 10b-5 by a person (the controlled person) who is directly or indirectly controlled by another person (the controlling person) to the same extent as the controlled person is liable. To plead a *prima facie* case of § 20(a) liability, "plaintiff must show (1) a primary violation by the controlled person [Dembski], (2) control of the primary violation by the defendant [Mid-Atlantic], and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Communications, Inc. v. Shaar Fund, Ltd.,* 495 F.3d 87, 108 (2d Cir. 2007) (plaintiff's failure with particularity to adequately plead a § 10(b) claim requires dismissal of plaintiff's § 20(a) claim) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). Failing to "plead adequately a primary violation under § 10(b) and Rule 10b-5," [plaintiff's] control person liability claim under § 20(a) requires dismissal of a plaintiff's § 20(a) control person claim. *Ross v. Lloyd's Banking Grp., PLC,* 546 Fed.Appx. 5, at *12 (2d Cir. Sept. 19, 2013). Here, as discussed, Discussion, *supra*, at 9-21, as the court has determined Plaintiff's § 10(b) and Rule 10b-5 fraud claims against Dembski should be dismissed for lack of particularity and implausibility regarding the essential elements of materiality and scienter, Plaintiff has also failed to

adequately plead a primary violation by Dembski and, accordingly, Plaintiff's § 20(a) control person claim against Mid-Atlantic, Plaintiff's Third Cause of Action, should for that reason alone, be DISMISSED.

However, should the District Judge find Plaintiff's Second Cause of Action should not be dismissed, the undersigned turns to whether Plaintiff has sufficiently pleaded his § 20(a) claim's required elements regarding Mid-Atlantic's alleged control and culpable participation in Dembski's fraud in placing Plaintiff's investment in the Fund as an unsuitable investment.  Plaintiff has not.

To establish "control" under § 20(a), Plaintiff must plead that Mid-Atlantic exercised actual control over Dembski, as the alleged primary violator, and the transaction, *i.e.*, the solicitation and transfer of Plaintiff's $250,000 investment into the Fund.  *See In re MF Global Holdings Ltd. Sec. Litig.*, 982 F.Supp.2d 277, 307 (S.D.N.Y. 2013) ("[A] Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question." (internal quotation marks and citations omitted; (italics in original)) *Anwar v. Fairfield Greenwich Ltd.,* 728 F.Supp.2d 372, 426 (S.D.N.Y. 2010) ("[A] plaintiff must plead that the defendant had actual control over the primary violator and transaction at issue.").  While a § 20(a) control issue is fact-intensive and, as not involving fraud *per se,* is not subject to the heightened pleading requirements of Rule 9(b), *see In re MF Global Holdings Ltd. Sec. Litig.*, 982 F.Supp.2d at 307 (citing cases), nevertheless Plaintiff is required to allege facts which "create a plausible inference" that Mid-Atlantic "controlled" Dembski during the relevant period in 2012.  *See In re Tronox, Inc. Sec. Litig.* 769 F.Supp.2d 202, 210 (S.D.N.Y. 2011).  For example, an allegation indicating a controlling defendant was

"deeply involved in [defendant's] day-to-day operations as they pertained to the transaction at issue" was found sufficient to plead a § 20(a) control claim.  *Id.* at 214.  *See also Anwar*, 728 F.Supp.2d at 427 (defendant's oversight of [controlled entity's] "day-to-day operations" made it "at least plausible that [defendant] exerted actual control over the fraudulent transaction at issue").  Here, no allegation in the First Amended Complaint states any fact upon which it may be plausibly inferred, *In re Tronox, Inc. Sec. Litig.*, 769 F.Supp.2d at 210, that Mid-Atlantic had any involvement in either the day-to-day operation of the Fund or Prestige Mgm't.'s management of the Fund, or more basically, Dembski's conduct in soliciting Plaintiff's investment or the transfer of Plaintiff's money into the Fund.  Other than parroting generalized terms in the statutory language of § 20(a), the First Amended Complaint is silent with respect to how, if at all, Mid-Atlantic had anything whatsoever to do with Dembski, the Fund, or Prestige Mgm't.'s day-to-day operations including providing any managerial oversight over such operations.  Specifically, Plaintiff's allegations indicate only that Dembski, while a Mid-Atlantic registered representative, persuaded Plaintiff to invest, Plaintiff transferred the money to Reliance in an Ameritrade account, and that Reliance, not Mid-Atlantic, arranged to purchase Plaintiff's limited partnership interest in the Fund and transfer Plaintiff's money into it.  First Amended Complaint ¶¶ 232-24.  Plaintiff's § 20(a) claim therefore fails to satisfy *Iqbal's* plausibility requirement as applicable to the actual control element for both Dembski and the transaction, *see Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F.Supp. 1369, 1378 (S.D.N.Y. 1996) (dismissing control person claim for failure to sufficiently allege facts "that support an inference that [the alleged control person] had potential power to influence and direct the activities" of a

corporation), and, as such, Plaintiff's Third Cause of Action should be DISMISSED as to this ground.

Nor Plaintiff's allegations meet the degree of particularity required to satisfy § 20(a)'s required element that the alleged control person, Mid-Atlantic, "was, in some meaningful sense, a culpable participant in the controlled person's [Dembski] fraud [selling Plaintiff an unsuitable investment in the Fund]." *In re MF Global Holdings Ltd. Sec. Litig.,* 982 F.Supp.2d at 306 (quoting *ATSI Commc'ns,* 493 F.3d at 108 (internal citation omitted)). "In order to withstand a motion to dismiss, a plaintiff asserting § 20(a) liability must allege, <u>at</u> <u>a</u> <u>minimum</u>, particularized facts of the controlling person's <u>conscious</u> misbehavior or recklessness." *In re MF Global Holdings Ltd. Sec. Litig.,* 982 F.Supp.2d at 307 (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 414-17 (S.D.N.Y. 2001), and noting that the "heightened pleading standards of the PSLRA apply to the third prong of a Section 20(a) claim, which requires plaintiffs to allege facts demonstrating that the defendant was a culpable participant" (citing *In re Alstom SA (Alstom III),* 406 F.Supp.2d 433, 491 (S.D.N.Y. 2005) ("*In re Alstom*")). Such "[c]ulpable participation <u>clearly</u> requires something more than negligence," *In re Alstom SA (Alstom III),* 406 F.Supp.2d at 490, and a plaintiff claiming § 20(a) liability must allege defendant's state of mind with respect to the participatory behavior was one "at least approximating recklessness." *Lapin v. Goldman Sachs Grp., Inc.* 506 F.Supp.2d 221, 248 (S.D.N.Y. 2006). For § 20(a) purposes, reckless conduct is alleged conduct by the controlling person which is "highly unreasonable" or constitutes "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either <u>known</u> <u>to</u> <u>the</u> <u>defendant</u> <u>or</u> <u>so</u> <u>obvious</u> <u>that</u> <u>the</u> <u>defendant</u> <u>must</u> <u>have</u> <u>been</u> <u>aware</u>

of it." *In re Alstom*, 406 F.Supp.2d at 491 (internal citations and quotation marks omitted). Section 20(a) also requires that a plaintiff sufficiently alleging recklessness must "plead facts giving rise to a strong inference that the controlling person knew or should have known that the [controlled person, *i.e.*, Dembski] was engaging in fraudulent conduct [soliciting Plaintiff by false representations to invest in the Fund], but took no steps to prevent the primary violation." *Cromer Fin. Ltd. v. Berger*, 137 F.Supp.2d 452, 484 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). A "[f]ailure to adequately monitor the behavior of others . . . standing alone, do[es] not rise to the level of recklessness." *In re Alstom*, 406 F.Supp.2d at 491. Thus, absent any allegation that Mid-Atlantic had knowledge of Dembski's investment activities on behalf of the Fund yet failed to take responsive action, *see Belmont v. MP Inv. Partners, Inc.*, 708 F.3d 470, 486 (3ʳᵈ Cir. 2013) (reckless inaction requires allegation of knowledge of underlying fraud-failure to oversee enforcement of compliance protocols does not necessarily constitute recklessness for purposes of a § 20(a) claim); *Friedman v. JP Morgan Chase & Co.*, 2016 WL 2903273, at *12 (S.D.N.Y. May 18, 2016) (holding capacity of defendant financial holding company "to prevent the fraudulent conduct is, without more, insufficient to plead culpable participation in a[n alleged fraudulent] scheme" for purposes of § 20(a)), is insufficient and requires dismissal.

Here, to satisfy his obligation to adequately plead that Mid-Atlantic culpably participated in Dembski's underlying fraud, Plaintiff relies on Plaintiff's allegation that Dembski was Mid-Atlantic's employee and that NASD Rule 3040 (now FINRA Rule 3280) required Mid-Atlantic's supervision of Dembski activities with respect to the Fund. Plaintiff's Memorandum (Dkt. 57-2) at 11 (referencing First Amended Complaint ¶¶ 45-

46). Specifically, in paragraph 45 of the First Amended Complaint, Plaintiff alleges "Dembski disclosed his involvement with Prestige Management and Prestige Fund to Mid-Atlantic," and paragraph 46 alleges that "Mid-Atlantic was required by securities industry rules to supervise Dembski's solicitation of investors to the Prestige Fund in the same manner as it was required to supervise Dembski's activities in accounts maintained by Mid-Atlantic, regardless of whether the individual(s) solicited by Dembski are in fact customers of Mid-Atlantic." Plaintiff's reliance on paragraphs 45 and 46 to satisfy Plaintiff's duty to allege with particularity facts upon which it may be strongly inferred that, as the alleged controlling person, Mid-Atlantic knew or should have known of Dembski's fraud, *Cromer*, 137 Supp.2d at 484, yet failed to take responsive action, *Belmont*, 708 F.3d at 486, fails for two basic reasons. First, as discussed, Discussion, *supra*, at 26-28, as FINRA Rule 3280 cannot serve as the basis for *respondeat superior* liability under § 10(b) and Rule 10b-5 liability, it cannot provide any support to Plaintiff's § 20(a) claim which is "derivative" of Plaintiff's § 10(b) claim. *See In re MF Global Holdings Ltd. Sec. Litig.*, 982 F.Supp.2d at 307 (citing *SEC v. First Jersey Sec. Litig.*, 101 F.3d 1450, 1472 (2d Cir. 1996)). Significantly, Plaintiff cites to no case which holds that a broker-dealer's obligation to supervise its registered representative in accordance with FINRA Rule 3280 displaces or satisfies § 20(a)'s requirements that a plaintiff plead with particularity facts which demonstrate that the alleged controlling person had actual knowledge of or acted recklessly with respect to the controlled person's alleged underlying fraud as a necessary predicate to liability under § 20(a). *See Belmont*, 708 F.3d at 486; *Cromer Fin. Ltd*, 137 F.Supp.2d at 484. Thus, that Dembski allegedly served as Mid-Atlantic's employee and registered representative, without an allegation

that as a result of such alleged employment, or business or relationship, Mid-Atlantic also had actual knowledge of the fraudulent conduct or with recklessness, failed to act to prevent Dembski's alleged fraud, is irrelevant to Plaintiff's § 20(a) claim. Second, Plaintiff's allegation in ¶ 45 that Mid-Atlantic was informed that Dembski was "involved" with Prestige Mgm't. and the Fund, construed favorably to Plaintiff, in no way satisfies the prerequisites of FINRA Rule 3280. Specifically, Rule 3280 requires an associated person of a member, *see* Rule 3280(a), "prior to participating in any private security transaction . . . to provide written notice to the member with which he is associated describing in detail the proposed transaction . . .." Rule 3280(b). Only if the member receives such notice, and "approves the [associated] person's participation in the proposed transaction" does Rule 3280 impose supervisory responsibility upon the member. *See* Rule 3280(c)(2). Plaintiff does not dispute his Prestige Fund investment represented a "private security transaction" within Rule 3280, indeed, Plaintiff relies on this assertion. Thus, even assuming, for the sake of analysis only, that Rule 3280 is applicable to § 10(b) and § 20(a) claims, Plaintiff's allegations that "Dembski disclosed his involvement" with Prestige Mgm't. and the Prestige Fund to Mid-Atlantic make utterly no reference to any "proposed transaction," *i.e.*, an investment in the Fund by Plaintiff (or by any other investor in the Fund), and, as such, does not even remotely comply with Rule 3280's prerequisites for imposing any supervisory responsibility over Dembski's solicitation of Plaintiff, which may be created by the Rule, let alone that Mid-Atlantic had any foreknowledge of Dembski's alleged fraud in recommending an unsuitable investment to Plaintiff.

For example, nowhere does the First Amended Complaint indicate any details as to specifics of Dembski's solicitation, or allege that Mid-Atlantic had involvement in the solicitation, or approved or brokered the investment, or was even made aware of the investment after the fact. Although, as Plaintiff contends, questions of control person liability are normally fact-intensive questions which should not be resolved on a motion to dismiss, Plaintiff's Memorandum, Dkt. 57-2, at 12 (citing *In re Tronox Sec. Litig.*, 769 F.Supp.2d 202, 210-16 (S.D.N.Y. 2011); *see In re Global Holdings, Ltd. Sec. Litig.*, 982 F.Supp.2d at 307 (quoting *Katz v Image Innovations Holdings,* 542 F.Supp.2d 269, 276 (S.D.N.Y. 2008) (internal quotation marks omitted)), nevertheless, where a § 20(a) plaintiff insufficiently pleads culpable participation by failing to allege "any particular facts concerning any conscious misbehavior" and the complaint contains "no allegation that [the controlled person] was acting on behalf of [the controlling person] when he [the controlled person] dealt with plaintiff") the complaint should be dismissed. *See Kalin v. Xanboo, Inc.*, 526 F.Supp.2d 392, 407 (S.D.N.Y. 2007); *see also In re SAIC, Inc. Sec. Litig.*, 2013 WL 5462289, at *16 (S.D.N.Y. Sept. 30, 2013) (dismissing complaint when it contain[ed] no particularized facts of the [alleged control person's] conscious misbehavior. In particular, where § 20(a) liability is asserted based on the registered representative acting as an agent of a broken-dealer "control person liability is properly pled by pleading control over the agent/primary violator while the agent is acting within the scope of their duties in connection with the illegal acts." *CompuDyne Corp.*, 453 F.Supp.2d 831 (denying defendant's motion to dismiss where representative was defendant's salaried employee, executed short-sales, damaging plaintiff's interests, splitting profits with defendant, executed through defendant's account (citing caselaw));

*see also Marbury Mgt., Inc. v. Kohn*, 629 F.2d 705, 706 (2d Cir. 1980) ("[t]he erring salesman complete[d] the transactions through the employing brokerage house and brokerage house receive[d] a commission on the transaction . . .").  Thus, standing alone, Plaintiff's § 20(a) unparticularized and conclusory allegations that Dembski was employed or acted as Mid-Atlantic's agent are insufficient  to establish a plausible claim of § 20(a) liability against Mid-Atlantic as a matter of law.  That Plaintiff's allegations in support of Mid-Atlantic's liability under § 20(a) are patently insufficient requires that Plaintiff's Third Cause of Action be DISMISSED.

Plaintiff's assertion that dismissal is improper in this case because discovery is required to develop the facts necessary to support Plaintiff's *respondeat superior* and § 20(a) claims, Plaintiff's Memorandum, Dkt. 57-2, at 16, is also without merit. Significantly, Plaintiff cites to no Second Circuit caselaw suggesting that dismissals of § 10(b) or § 20(a) claims should be denied merely because a plaintiff asserts it requires discovery to develop the underlying facts which may establish the underlying fraud or the basis for control person liability.  Courts in this circuit have held that even where evidence to support a plaintiff's claim of an FLSA violation is in the "exclusive possession" of defendant, a plaintiff is not excused from pleading a plausible claim as required by *Iqbal.  See Angiulo v. County of Westchester (N.Y.)*, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012).  "[A]s *Iqbal* makes clear, a plausible claim must come *before* discovery, not the other way around."  *Id.* citing *Iqbal*, 556 U.S. 678-79.  *See also City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.,* 952 F.Supp.2d 633, 635 (S.D.N.Y. 2013) (securities fraud action "cannot survive a motion to dismiss unless it provides considerable factual detail supporting each of the essential

elements of a securities fraud claim . . . by a 'demurrer-like' process that creates

considerable hurdles that a plaintiff must overcome before any discovery is permitted")

Additionally, Plaintiff provides no excuse for not alleging particularized facts supporting

Plaintiff's claim of unsuitability, such as Plaintiff's risk tolerance level, investment goals

and financial acuity and the circumstances surrounding Dembski's alleged

misrepresentations of facts, which should reasonably be available to Plaintiff as within

Plaintiff's own knowledge.  *See Fox v. Lifemark Securities Corp.*, 84 F.Supp.3d 239,

244 (W.D.N.Y. 2015) (granting summary judgment to defendant where record devoid of

any evidence of knowing misrepresentations of material fact made by [defendant

investment advisor] with respect to the suitability of the four investments "at issue").

5.     Common Law Fraud – Plaintiff's Fifth Cause of Action.[10]

        In Plaintiff's Fifth Cause of Action Plaintiff alleges Mid-Atlantic engaged in

common law fraud in that Mid-Atlantic was an "active participant[ ] in Dembski's

fraudulent solicitation of Plaintiff's investment in the Fund through Dembski's

misrepresentations and/or omissions."  First Amended Complaint ¶¶ 69, 70.  Under New

York law, to state a claim for the tort of common law fraud plaintiff must allege "'(1) the

defendant's misrepresentations or omission of a material fact, (2) the defendant's intent

to deceive plaintiff, (3) justifiable reliance upon the misrepresentation by the defrauded

party, and (4) that the plaintiff's injury was caused by the defendant's misrepresentation

or omission.'"  *Rich v. Maidstone Financial, Inc.*, 2002 WL 31867724, at *13 (S.D.N.Y.

Dec. 20, 2002) (quoting *Morse v. Weingarten*, 777 F.Supp. 312, 319 (S.D.N.Y. 1991);

---

[10]    Although not addressed by the parties the court recommends that in this diversity action the court
should exercise supplementary jurisdiction over Plaintiff's common law fraud claim pursuant to 28 U.S.C.
§ 1367(a) as such claim arises from the same common nucleus, 28 U.S.C. § 1367(a), of facts as
Plaintiff's federal claims, the state claim does not predominate, and presents no novel or complex issue of
state law.  *See* 28 U.S.C. § 1367(c).

*see also Lama Holding Co. v. Smith Barney, Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996).

"A claim for common law fraud under New York law must also satisfy the requirements of Rule 9(b)." *Steinberg v. Sherman*, 2008 WL 2156726, at *5 (S.D.N.Y. May 8, 2008) (citing *Lewis v. Rosenfeld*, 138 F.Supp.2d 466, 477-78 (S.D.N.Y. 2001)). In this case, a fair reading of the First Amended Complaint and drawing all reasonable inferences in Plaintiff's favor shows it fails to particularize any misrepresentations or omissions allegedly made to Plaintiff by Mid-Atlantic in connection with Dembski's solicitation or Plaintiff's decision to invest in the Fund, *see* First Amend Complaint (Dkt. 31 *passim*), and, significantly, Plaintiff fails to point to any. *See* Plaintiff's Memorandum, Dkt. 57-2, (*passim*). Plaintiff's assertion that Mid-Atlantic was an "active participant" in the fraud, Dkt. 31 ¶ 70, includes no indication of how Mid-Atlantic conceivably engaged in such "active participation" and as such can only fairly be described as conclusory and lacking in any particularity as required by Rule 9(b). Further, to the extent that Plaintiff seeks primarily to impose § 10(b) and Rule 10b-5 liability upon Mid-Atlantic based on Plaintiff's assertions of *respondeat superior* and § 20(a) control person liability, for the reasons discussed, Discussion, *supra*, at 21-25 (as to *respondeat superior*) and at 28-38 (as to § 20(a)), Plaintiff's Fifth Cause of Action is also insufficient. Accordingly, for these reasons, Plaintiff's Fifth Cause of Action asserting common law fraud against Mid-Atlantic should also be DISMISSED.

6.    <u>Dismissal with Prejudice</u>.

Mid-Atlantic contends that dismissal of the First Amended Complaint should be with prejudice. Mid-Atlantic Memorandum (Dkt. 56-1) at 6; Mid-Atlantic Reply (Dkt. 59) at 9. Plaintiff requests leave to file a Second Amended Complaint in the event the court

should grant Defendants' motion to dismiss.  Plaintiff's Memorandum (Dkt. 57-2) at 16-17 (pursuant to Fed.R.Civ.P. 15(a), leave to file amended pleading "should be freely granted when justice so require," (citing *Cortec Indus., Inc. v. Sum Holding, LP,* 949 F.2d 42 (2d Cir. 1991))).  Leave to replead may be denied where a request to file an amended pleading results from undue delay, bad faith, results in undue prejudice or is futile.  *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (leave to file an amended complaint "shall be freely given when justice so requires.").  "[A]n amended pleading may be filed pursuant to Rule 15(a) where the new allegations do not unduly prejudice an opponent, are not the result of undue delay or bad faith, and are not futile."  *Warren v. Goord*, 2006 WL 1582385, at * 7 (W.D.N.Y. May 26, 2006).  Further, "[a]n amendment to a pleading is futile if it could not withstand a motion to dismiss under Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  In ruling on a motion under Rule 12(b)(6), and, thus, in considering the plausibility of a proposed amended pleading, the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated into the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  Here, Mid-Atlantic contends Plaintiff's request is futile given that Plaintiff concedes that without discovery Plaintiff is unable to satisfy the requirements of particularity with respect to Dembski's alleged fraud and Mid-Atlantic's alleged scienter and culpable involvement in the alleged fraudulent conduct.  *See* Mid-Atlantic Reply at 10 referencing Plaintiff's Memorandum (Dkt. 57-2) at 16 ("Thuman requires discovery to determine whether MACC was an active participant in the fraud perpetuated against

Thuman or if its liability is based solely on *respondeat superior* and control person liability."). As discussed, Discussion, *supra*, at 9-21, the First Amended Complaint[11] is bereft of any facts which arguably satisfy the requirement that under the PSLRA a securities fraud plaintiff plead particularized facts strongly implying fraudulent misconduct and scienter. Additionally, as discussed, Discussion, *supra*, at 21-38, Plaintiff's *respondeat superior* and § 20(a) allegations are insufficient as a matter of law. Thus, the court finds that granting Defendant's motion should be with prejudice as it will be futile to allow Plaintiff to serve a second amended complaint as an attempt to cure the many substantive defects presented in the First Amended Complaint against Mid-Atlantic. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (where leave to replead would be futile dismissal may be with prejudice and without leave to file an amended complaint); *Roache v. Fischer*, 2015 WL 1442963, at *9 (N.D.N.Y. Mar. 26, 2015) ("opportunity to amend is not required [ ] where the problem with plaintiff's causes of action is substantive such that better pleading will not cure it"). Plaintiff's reliance on *Cortec* is misplaced. In *Cortec,* the court reversed the district court's refusal to grant leave to refile where the defect upon which dismissal was based arose from plaintiff's failure to assert that one of the defendants had solicited the sale of that defendant's warrants in violation of § 12(a) of the Securities Act of 1933. *Cortec Indus., Inc.*, 949 F.2d at 50 ("No suggestion in averments of the complaint that an amendment would not supply the facts required to support the allegations and to cure the defect"). Here, Plaintiff filed the First Amended Complaint long after Dembski's answer was filed. Compared to the present circumstances, rather than supporting Plaintiff's request for

---

[11] The First Amended Complaint was filed 14 months after Dembski's answer was filed on December 20, 2013 (Dkt. 8), without stipulation of the parties or court order as required by Fed.R.Civ.P. 15(a)(1)(B).

dismissal without prejudice, as the First Amended Complaint lacks any indicia that its substantive deficiencies may be feasibly overcome, the holding in *Cortec* actually supports dismissal with prejudice in this case.

## CONCLUSION

Based on the foregoing, Defendant's motion (Dkt. 56) should be GRANTED with prejudice and the Clerk of Court be directed to terminate the action as to Mid-Atlantic, and the matter remitted to the undersigned to schedule further proceedings.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  March 29, 2017
        Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 29, 2017
            Buffalo, New York