UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY J. THUMAN,

                             Plaintiff,

               v.

TIMOTHY S. DEMBSKI,
SCOTT M. STEPHAN,
PRESTIGE WEALTH MANAGEMENT FUND, LP,
PRESTIGE WEALTH MANAGEMENT, LLC,
MID-ATLANTIC CAPITAL CORPORATION,
RELIANCE FINANCIAL ADVISORS, LLC,

                          Defendants.

_____

**DECISION
and
ORDER**

**13-CV-01087A(F)**

APPEARANCES:      WEBSTER SZANYI, LLP
                        Attorneys for Plaintiff
                        THOMAS S. LANE,
                        MICHAEL P. McCLAREN,
                        D. CHARLES ROBERTS, JR., and
                        KEVIN GEORGE COPE, of Counsel
                        1400 Liberty Building
                        Buffalo, New York  14202

                        LIPPES MATHIAS WEXLER FRIEDMAN LLP
                        Attorneys for Defendant Dembski
                        DENNIS C. VACCO, and
                        ERIC MICHAEL SOEHNLEIN, of Counsel
                        50 Fountain Plaza
                        Suite 1700
                        Buffalo, New York  14202

                        K&L GATES, LLP
                        Attorneys for Defendant Mid-Atlantic Capital Corp.
                        ERIC R.I. COTTLE, of Counsel
                        389 Lexington Avenue
                        New York, New York  10022
                              and
                        JAMES P. ANGELO, of Counsel
                        210 Sixth Avenue
                        Pittsburgh, Pennsylvania  15222

In this action Plaintiff alleges investment fraud based on Defendants' violations of federal securities laws, breach of fiduciary duty against Defendants Timothy S. Dembski ("Dembski" or "Defendant"), Reliance Financial Advisors, LLC ("Reliance"), Prestige Wealth Management, LLC ("Prestige"), and Prestige Wealth Management Fund, LP ("the Prestige Fund" or "the Fund"), common law fraud against all Defendants, and negligence against Defendants Scott Stephan ("Stephan"), Prestige and the Prestige Fund.  Defendants Dembski and one Walter F. Grenda, Jr. ("Grenda"), a non-party, co-founder and, according to an SEC finding, "jointly owned," Reliance, (Dkt. 135-2 "Dembski and Grenda founded and jointly owned Reliance"), as investment advisors.  In early 2011, Dembski and Stephan co-founded the Prestige Fund.  (Dkt. 135-2 at 4). The action against Defendant Mid-Atlantic was dismissed by Decision and Order of Hon. Richard J. Arcara on May 10, 2021 (Dkt. 107); Plaintiff's motion for partial summary judgment against Dembski for violations of the Security Exchange Act Section 10(b) and Rule 10b-5, for breach of fiduciary duty and common law fraud, was granted by Judge Arcara on May 10, 2021 (Dkt. 108) and the matter was recommitted to the undersigned to determine Plaintiff's damages.  The action against Defendant Stephan was dismissed by Judge Arcara on March 30, 2022 (Dkt. 141) based on Plaintiff obtaining a judgment against Stephan in U.S. Bankruptcy Court; on the same date the action was also dismissed by Judge Arcara against Defendants Prestige Fund, Prestige Wealth Management and Reliance as time-barred based on Plaintiff's failure to prosecute (Dkt. 141) and the matter was again recommitted to the undersigned for determination of Plaintiff's damages against Defendant Dembski.  In accordance with

Judge Arcara's referral, a Scheduling Order was entered by the undersigned on June 30, 2021 providing for completion of discovery on the issue of Plaintiff's damages by October 27, 2021 (Dkt. 112).  On September 10, 2021, pursuant to Fed.R.Civ.P. 34(a) ("Rule 34(a)"), Plaintiff served Plaintiff's Request for Production ("Plaintiff's Request"). By joint request of the parties, an Amended Scheduling Order was entered September 23, 2021 (Dkt. 120) and a Second Amended Scheduling Order was filed October 19, 2021 (Dkt. 123).  At Dembski's request, a Third Amended Scheduling Order was entered January 7, 2022 (Dkt. 126) extending to March 15, 2022 the completion date for fact discovery including Dembski's deposition with expert disclosures and dispositive motions to follow.

The Fund was found in 2011 by Dembski together with Stephan as a limited partnership private placement investment, or hedge, fund.  In 2011, Dembski and Stephan also found and co-owned Prestige Wealth Management organized as an advisor to the Fund, charging the Fund with both an annual 2% management fee and 20% performance fee.  Prestige was the general partner in the Fund with Dembski acting as Prestige's managing partner.  The Fund was structured to give Stephan the sole responsibility for the Fund's investment decisions as its Chief Investment Officer using a coded algorithm ("the algorithm") created by Stephan to conduct trades on behalf of the Fund involving long and short positions executed by the algorithm for selected stocks at specific times each day determined by the algorithm.  Reliance was, since 2011, a registered investment advisor founded by Dembski and Grenda, and subsequently ceased operations.  Prior to founding the Fund in 2011 with Dembski, Stephan was employed by Reliance Group, an investment advisor, and Reliance's

3

predecessor, which was jointly owned by Dembski and Grenda.  Mid-Atlantic is a national broker-dealer which employed Dembski as a registered representative.  Mid-Atlantic maintained an office at the same address in Buffalo, New York, as Reliance. Both Dembski and Stephan, who had little prior experience as stock traders and no experience in hedge fund management, were employed by Reliance, Dembski as Reliance's managing partner and Stephan as a telemarketer.

Dembski served as Plaintiff's tax preparer since 2007 and periodically solicited Plaintiff to invest in the Fund which Plaintiff eventually did, on April 20, 2012, transferring $250,000 to the Fund from Plaintiff's employer's 401(k) retirement account in Plaintiff's name with Reliance listed, on September 12, 2012, as an independent advisor on the account, and purchasing a subscription in the Fund in Plaintiff's name. Dkt. 97 at 5-7.  Dembski's solicitations included representations that the Fund "was a safe investment with unlimited up-growth potential and a minimum risk of loss of 10% of an investor's principal."  Dkt. 70 at 3-4; *see also* Dkt. 97 at 5.  After experiencing a $22,928.08 or 9.17% gain as of October 26, 2012, Plaintiff's Fund account posted, as of December 31, 2012, according to a notice Plaintiff received from the Fund or Prestige, a $224,073.95 or 82.10% loss.  *Id.* at 4-5.  In December 2012, the Fund lost 80% of its value as a result of Stephan's manual trades without use of the algorithm.  Dkt. 135-2 at 4.  In responding to Plaintiff's inquiry, Dembski told Plaintiff he was "shocked" by the loss for which he blamed Stephan acting as a "rogue trader."  Dkt. 70 at 5; *see also* Dkt. 97 at 6.  Plaintiff subsequently, in May 2013, closed the account upon receiving the remaining principal of $24,274.23. *Id.; see also* Dkt. 97 at 6.

Thereafter, the SEC commenced administrative enforcement proceedings against Reliance, Dembski, and Grenda which, following an evidentiary hearing before an Administrative Law Judge, resulted in a finding that Dembski had violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 ("Rule 10b-5") (see Dkt. 97 at 7 (citing *In re Reliance Financial Advisors, LLC*, SEC Release No. 941, 2016 WL 123127 (ALJ Jan. 11, 2016), *aff'd by the SEC*, *In re Reliance Financial Advisors, LLC*, SEC Release No. 4671, 2017 WL 1103685 (Mar. 24, 2017), *aff'd*, *Dembski v. United States Securities and Exchange Comm*, 726 Fed.Appx. 841 (2d Cir. 2018)).  Rule 10b-5 provides a private right of action on the grounds upon which the instant action is based, *see* Dkt. 97 at 7 n. 4.  On June 17, 2018, Plaintiff moved, based on the SEC determination, against Dembski for summary judgment arising from Dembski's federal securities law violations, breach of fiduciary duty and common law fraud claims.  Dkt. 88.  Based on collateral estoppel as applicable to the SEC determination against Dembski, in a Report and Recommendation dated May 5, 2020, the undersigned recommended Plaintiff's motion be granted, *see* Dkt. 97 at 35 ("the May 5, 2020 Report and Recommendation"), and the matter referred back to the undersigned for a determination of damages.  By Decision and Order filed May 10, 2021, District Judge Arcara adopted the May 5, 2020 Report and Recommendation and referred the matter to the undersigned for a determination of damages.  Dkt. 108.  Following, as noted, an initial Scheduling Order by the undersigned, on June 20, 2021 (Dkt. 112) Plaintiff commenced discovery by serving Defendant Plaintiff's document production requests and a notice of deposition to Defendant (Dkt. 129-1 ¶ 16) ("Plaintiff's discovery demands").  Plaintiff's discovery demands are directed to Defendant's "intent and state of mind . . . relevant to Plaintiff's

claim for punitive damages." *Id.* ¶ 38.  An award of punitive damages for violation of a breach of fiduciary duty and common law fraud,[1] requires "fraud evincing a 'high degree of moral turpitude' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligation,'" and that "the conduct was 'aimed at the public generally.'"  *Rocanova v. Equitable Life Assurance Soc'y,* 634 N.E.2d 940, 943 (N.Y. 1994).

More specifically, Plaintiff's discovery requests, Dkt. 129-2, seek documents, including correspondence and e-mails, relating to communications between Plaintiff and Defendant regarding the Fund and Prestige including the Fund's performance and results prior to April 25, 2012, all reports to be provided by Plaintiff relating to the Fund, communications between Dembski and Plaintiff regarding the Fund's performance between October 1, 2012 and December 31, 2012, documents regarding Defendant's communications with Grenda concerning the Fund and Prestige for the period April 24, 2012 to the present, similar communications between Plaintiff and Stephan regarding the Fund, and documents relating to Stephan's development and operation of the trading formula, *i.e.*, algorithm, for the Fund for the period prior to April 25, 2012 to the present, Defendants' communications with other employees of Reliance regarding the Fund's operation and performance prior to April 25, 2012, and Defendants' communications with Reliance employees regarding the Fund and Prestige Management.  *See* Dkt. 129-2 ¶¶ 1-23.  Defendant's response on October 29, 2021 included primarily documents relating to Dembski's prior tax advisor services to Plaintiff, unrelated to Plaintiff's claims in the instant case, Defendant's response to an

---

[1] The court notes punitive damages are not available for fraud under the Security Exchange Act.  *See Boguslavsky v. Kaplan*, 159 F.3d 715, 721 (2d Cir. 1998).

investigation by FINRA, two e-mails and one partial e-mail between Defendant and one Ken Graham at Damon and Morey, a law firm, an e-mail dated August 13, 2012 to Dembski from Plaintiff, a copy of the subscription agreement between Plaintiff and Prestige, and a financial statement for the Fund dated January 13, 2013.  *See* Dkt. 129-6.  In Defendant's response, (Dkt. 129-4), Defendant asserted Defendant had provided responsive documents advising Defendant would produce additional documents if such "are discovered."  Dkt. 129-4 (*passim*).  Defendant asserted no objections to Plaintiff's requests except as to Plaintiff's Requests Nos. 12-13, relating to documents between Defendant and Grenda, Nos. 14-19, documents relating to communications between Defendant and Stephan, and Nos. 22-23, relating to communications between Defendant and other Reliance employees.  Thereafter, Plaintiff, by letter dated December 9, 2021 (Dkt. 129-6), informed Defendant that Defendant's responses were deficient and requested supplemental production.  Dkt. 129-6.

In Plaintiff's response to Defendant, Plaintiff contends Defendant's relevancy objections are without merit, that all of Plaintiff's requests are relevant to Defendant's intent and state of mind and thus for discovery purposes are relevant to Plaintiff's punitive damage claims, and demanded further production by December 17, 2021 ("Plaintiff's December 9, 2021 Letter").  No response to  Plaintiff's December 9, 2021 Letter from Defendant was received by Plaintiff.  Dkt. 129-1 ¶ 20.  On December 21, 2021, Plaintiff sent a second letter to Defendant demanding Defendant supplement Defendant's response, Dkt. 129-7, to which Defendant also failed to respond.  Dkt. 129-1 ¶ 22.  On December 29, 2021, Plaintiff informed Defendant that Defendant was to provide supplemental responses by January 5, 2022, and scheduled Defendant's

deposition for January 13, 2022. *See* Dkt. 129-8 ("Plaintiff's December 29, 201 Letter"). Defendant's response to Plaintiff's December 29, 2021 Letter was an e-mail dated December 29, 2021, advising Defendant's counsel would contact Plaintiff's attorney regarding the issue the next day, December 30, 2021. *See* Dkt. 129-9. However, no call by Defendant's attorney occurred on December 30, 2021. *See* Dkt. 129-1 at ¶ 24. Plaintiff's counsel's subsequent attempt to call Defendant's attorney on January 3, 2022 was initially unsuccessful, *id.* Defendant's attorney eventually advised Plaintiff's counsel he would call Plaintiff's counsel on January 4, 2022, but no call was received by Plaintiff's attorney. Dkt. 129-1 ¶ 24. In a further communication, documentation for which is not in the record, Defendant's attorney indicated Defendant intended to provide supplemental responses. Dkt. 129-1 ¶ 25; however, as of the date of Plaintiff's motion, February 15, 2022 (Dkt. 129), no further discovery was provided by Defendant. *See* Dkt. 129-1 ¶ 27. As of the present time, the court has not been informed that Defendant has provided any additional discovery.

Defendant opposed Plaintiff's motion by cross-motion filed March 4, 2022 (Dkt. 134) ("Defendant's Cross-Motion"). In Defendant's Cross-Motion, Defendant avers Defendant terminated his employment with Reliance in 2013 and that all records responsive to Plaintiff's requests remained with Reliance. Defendant's Declaration dated March 2, 2022, Dkt. 134-3 (communications between Defendant and Plaintiff) (Plaintiff's Requests 1-9) ¶¶ 3-4; ¶ 9 (matters between Defendant, Stephan and Grenda). Defendant's Declaration does not specifically address the location of documents pertaining to Defendant's communications with other Reliance employees concerning the Fund or Prestige. The court therefore assumes any such responsive

documents are in Reliance's files as Defendant's Declaration implies.  According to

Defendant, Defendant had previously sought to obtain responsive documents from

counsel to Reliance and Grenda, *see* Dkt. 134-1 ¶¶ 13-15, who, according to

Defendant, had recently, January 7, 2022, agreed to search Reliance's records for

documents responsive to Plaintiff's requests.  Defendant also notes Plaintiff could have

but failed to subpoena such records from Reliance pursuant to Fed.R.Civ.P. 45 ("Rule

45").  *Id.* ¶ 16.  Defendant's attorney further states he will provide any responsive

discovery received from Reliance's attorney after discussing the matter with Reliance's

attorney on March 1, 2022.  *Id.* ¶ 15.  To date, however, there is no indication in the

record by Defendant, such as an affidavit by Reliance's attorney confirming Defendant's

representations, that Reliance's attorney has in fact searched any of Reliance's records,

for any responsive documents, as Defendant represented would be done, or that

Reliance's counsel has not, to date, provided any responsive documents to Defendant

for Defendant's further production to Plaintiff as Defendant represented in Defendant's

response to Plaintiff's motion.

Defendant contends Plaintiff's motion should be denied for failing to engage in a

good-faith effort to avoid motion practice as required by Fed.R.Civ.P. 37(a)(1) (Dkt. 134-

1 ¶ 18), as well as Plaintiff's failure to prosecute the action against Reliance, or seek

relevant documents from Grenda and Reliance by Rule 45 non-party subpoenas, and

that Dembski has no obligation under Rule 34(a) to produce responsive document "in

possession of another party."  Dkt. 134-1 ¶ 19.  Defendant therefore requests

Defendant be awarded his expenses in opposing Plaintiff's motion pursuant to

Fed.R.Civ.P. 37(a)(5)(B).  Dkt. 134-1 ¶ 20.  Defendant also requests, given the

incomplete status of discovery in this case, including the need to conduct depositions for Dembski, Reliance and Grenda, and the absence of expert disclosures, that the time within which to complete discovery be extended for at least 60 days. *Id.* ¶¶ 23, 24.

In Plaintiff's Reply, Plaintiff contends Defendant does not object to Plaintiff's discovery requests on relevancy and has limited Defendant's opposition based on Defendant's assertion that as the requested documents are in the possession of Reliance, Defendant is not required to produce them. Dkt. 135-1 ¶ 5. Plaintiff further contends that Defendant is nevertheless obligated to produce the documents as a co-founder and co-owner of Reliance, Defendant has control over the documents in Reliance's possession as Defendant avers they are and, as such, is obligated under Rule 34(a) to search for and produce responsive documents over which Defendant has custody or control, if not in Defendant's physical possession. Dkt. 135-1 ¶ 7. Plaintiff also points out that Dembski's averments do not negate or attempt to refute that Dembski, as co-owner of Reliance, had legal custody or control of any responsive documents. Dkt. 135-1 ¶ 6. Nor, Plaintiff argues, does Dembski explain why Dembski does not have access to responsive documents which may exist among the records of Prestige or the Fund, entities co-founded by Dembski and Grenda ("Prestige") and Dembski and Stephan ("the Fund"). Dkt. 135-1 ¶ 14. Plaintiff further contends Plaintiff has fully complied with Rule 37(a)(1) by Plaintiff's several letters and e-mail communications with Defendant's attorney during the period December 2021 through January 2022, prior to Plaintiff's motion, all which proved unfruitful in resolving the discovery issues as raised by Defendant's position that Dembski lacks possession of responsive documents which, according to Dembski's Declaration, were in the

possession of Reliance's attorney.  Dkt. 135-1 ¶¶ 16-17.  Plaintiff also requests Plaintiff's expenses in connection with Plaintiff's motion pursuant to Rule 37(a)(5)(A).

Defendant also moved, by papers filed March 15, 2022, for an order compelling the parties to participate in mediation in accordance with the court's ADR Plan.  Dkt. 138 ("Defendant's motion for mediation").  Mediation, as ordered by the court, Dkt. 1, did not occur; despite the instant discovery dispute, Defendant believes such mediation may be productive at this time.  Dkt. 138-1 ¶ 6.  Plaintiff states Plaintiff has no objection to Defendant's request and that Defendant's motion was unnecessary.   Dkt. 140 ¶¶ 4-5.

In Defendant's Attorney Declaration, filed March 14, 2022 (Dkt. 136), Defendant argues that Defendant is under no duty to produce pursuant to Rule 34(a) where Plaintiff could have sought the documents from the party with possession, in this case Reliance, but Plaintiff failed to do so, and Reliance has now been dismissed, Dkt. 136 ¶ 5, and the requested documents are now "out of his [Dembski's] possession."  Dkt. 136 ¶ 6.  Defendant further contends Plaintiff's failure to meet and confer on this issue establishes Plaintiff's non-compliance with Rule 37(a)(1).  Dkt. 136 ¶ 7.  Plaintiff, in response, contends Defendant's Attorney Declaration was submitted as a sur-reply in violation of Local R.Civ.P. 7(a)(6) which requires court permission to file a sur-reply and thus should be stricken.  *See* Dkt. 137.

(1)    Rule 37(a)(1).

As noted, Rule 37(a)(1) requires, as a prerequisite to a motion to compel, pursuant to Rule 37(a)(3)(B)(iv), document production, the requesting party, here Plaintiff, confer or attempt to confer to avoid unnecessary discovery motion practice.

*See Colton v. Fuller*, 2022 WL 484189, at *2 (W.D.N.Y. Feb. 17, 2022) (citing caselaw). *See also*, Local R.Civ.P. – W.D.N.Y. 7(d)(3) (moving party must aver sincere effort was made to resolve dispute).  Such meet and confer effort requires a "'genuine attempt to resolve the dispute through non-judicial means.'"  *Colton v. Fuller*, 2022 WL 484189, at *2 (quoting *Azzarmi v. Key Food Stores Co-Operative, Inc.*, 2021 WL 1734922, at *3 (S.D.N.Y. May 3, 2021)).  To "'confer'" includes counsel meeting in person or by telephone and covers "'what responsive material the responding party is capable of producing and a reasonable timetable for production.'"  *Id.* (quoting *Big Apple Pyrotechnics v. Sparktacular, Inc.*, 2006 WL 587331, at *1 (S.D.N.Y. Mar. 6, 2006)).  E-mail exchanges between counsel may suffice to satisfy Rule 37(a)(1), *see Ergas v. Eastpoint Recovery Group, Inc.*, 2021 WL 1711321, at *6 (W.D.N.Y. Apr. 30, 2021) (e-mails regarding status of production but without meaningful responses by counsel to the requested party satisfied Rule 37(a)(1)), provided the e-mail exchanges are not "perfunctory."  *Colton*, 2022 WL 484189, at *4.  It is within the court's discretion to determine whether the moving party has satisfied Rule 37(a)(1) requirements and whether further efforts to comply would be futile.  *See Ergas*, 2021 WL 1711321, at *6 (citing caselaw).

Here, the record indicates Defendant failed to respond to Plaintiff's December 9, 2021 Letter particularizing deficiencies in Defendant's October 29, 2021 responses and that Defendant also failed to respond to Plaintiff's December 17, 2021 Letter requesting Defendant supplement Defendant's responses to avoid a motion to compel.  Defendant also failed to respond to  Plaintiff's December 21, 2021 Letter which again demanded Defendant's supplemental responses.  On December 29, 2021, Plaintiff sent a further

letter to Defendant's counsel demanding Defendant provide the requested discovery by January 5, 2022. Thereafter, Defendant's attorney represented he would contact Plaintiff on January 4, 2022, presumably to discuss the issue, but no call was received by Plaintiff's counsel from Defendant. In a later, undated, discussion, Defendant's attorney represented he would provide further production through a review of Reliance files by Reliance's attorney. However, as of February 15, 2022, when Plaintiff filed the instant motion, Defendant did not provide any further production nor indicate, by affidavit or any communication from the Reliance attorney, the status of such attorney's review. *See* Dkt. 129-1 ¶¶ 25, 27. Nor has the court, to date, been informed that any such production has been forthcoming. Based on the absence of further production, as asserted would be done by Defendant, from the Reliance records, Defendant's assertion in opposition to Plaintiff's motion, that Reliance's attorney was "working on providing the relevant records to me [Eric Soehnlein]," Dkt. 134-1 ¶ 15, appears to be of dubious value. Moreover, given Defendant's position in opposition to Plaintiff's motion that Dembski was not obliged to obtain responsive records not currently in his physical possession or provide any evidence Dembski had searched the records of Prestige or the Fund which may be available to him and not lodged with Reliance's attorney for responsive documents, it is evident that further discussion with Defendant to avoid Plaintiff's motion would have been futile. Nor is there any merit in Defendant's contention that Plaintiff should have directed the document request at issue to Reliance by way of a discovery request or Rule 45 subpoena. The issue on Plaintiff's motion is not whether Plaintiff could have proceeded as Defendant asserts; the issue presented by Plaintiff's motion is whether Dembski, as the primary party defendant, is obliged,

pursuant to Rule 34(a), and is now required to produce the requested documents on the remaining issue of Plaintiff's damages.  Accordingly, the court finds Plaintiff has sufficiently complied with Rule 37(a)(1).

(2)     Relevancy.

In Defendant's response to Plaintiff's document requests, Defendant objected to certain requests as seeking irrelevant information.  In particular, Defendant objected to Plaintiff's Requests Nos. 10-16.  *See* Dkt. 129-4 at 4-5.  In sum, these requests demanded Defendant produce documents pertaining to operations of the Fund and Prestige exchanged between Defendant and Grenda during the period prior to and after April 2012 (Nos. 10-13), between Plaintiff and Stephan during the same period (Nos. 14-16), between Defendant and Stephan regarding development and operation of the trading formula or algorithm used by the Fund, and between Defendant and Stephan regarding the Fund and Prestige during the same period (Nos. 16-21).  Similarly, Defendant also objects to Plaintiff's Requests Nos. 22-23 seeking documents concerning communications between Defendant and other Reliance employees during the period to April 2012 to the present also based on an asserted lack of relevancy. *See* Dkt. 129-4 at 6.  Although in Defendant's opposition to Plaintiff's motion Defendant fails to provide support for Defendant's objections, *see* Dkt. 134-1 (*passim*), the court nevertheless addresses their validity.

In federal civil discovery it is basic that a party may request discovery regarding unprivileged matter relevant to the party's claim or defense provided the material sought is proportional to the needs of the case.  Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)").  For purposes of Rule 26(b)(1) relevancy is broadly construed.  *Olin v. Rochester City Sch.*

*Dist.*, 2019 WL 4643594, at \*3 (W.D.N.Y. Sept. 24, 2019) ("When objecting to a request

for discovery, it is the objecting party's burden to show 'specifically how, despite the

broad and liberal construction afforded the federal discovery rules, each [request] is not

relevant or how each question is overly broad, [unduly] burdensome or oppressive by

submitting affidavits or offering evidence revealing the nature of the burden.'" (quoting

*Ruran v. Beth El Temple of W. Hartford, Inc.*, 226 F.R.D. 165, 167 (D. Conn. 2005))).

Material is relevant for Rule 26(b)(1) discovery purposes if it bears on or is germane to

any issue in the case or that may become an issue, *see Anvik Corp. v. Samsung Elecs.*,

2009 WL 10695623, at \*2 (S.D.N.Y. Sept. 16, 2009) ("'Relevance for purposes of

discovery ... is synonymous with germane and ... it should not be read as meaning

competent or admissible.'" (quoting *Koch v. Greenberg*, 2009 WL 2143634, at \*2

(S.D.N.Y. July 14, 2009))), but such material need not be admissible as evidence to be

subject to discovery as provided in Rule 26(b)(1).  *Id.*  Once the requesting party

demonstrates that material sought is relevant, the resisting party must demonstrate why

the discovery is not permitted.  *See Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181

F.R.D. 229, 237 (W.D.N.Y. 1998) (the party opposing discovery bears the burden of

establishing the opposed discovery demands fail to comport with the standards set forth

in Rule 26(b)).  Here, Plaintiff contends Plaintiff's requests are relevant to Plaintiff's

requests for punitive damages.  *See* Dkt. 129-1 ¶ 38.  Thus, any documents which

would tend to demonstrate Defendant's state of mind including a gross disregard for the

accuracy or truthfulness of Defendant's representation to Plaintiff in order to persuade

Plaintiff to invest in the Fund, specifically, for example, Plaintiff's allegation that

Defendant assured Plaintiff that Plaintiff's risk of loss would be limited to 10% of

Plaintiff's investment, would be subject to discovery.  Although Plaintiff's Rule 10b-5

claim does not support an award of punitive damages, *see Boguslavsky*, 159 F.3d at

722, Plaintiff's common fraud claim, upon which the court has granted summary

judgment, under New York law does permit such an award where Plaintiff establishes

"gross, wanton, or willful fraud or other morally culpable conduct."  *Schlaifer Nance &*

*Co. v. Estate of Any Warhol*, 927 F.Supp. 650, 654 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 91

(2d Cir. 1997); *see also Rocanova,* 634 N.E.2d at 943 (discussing requirements for

punitive damages for common law fraud claim under New York law).  In this case,

records of Defendant's communications with Plaintiff regarding the expected returns on

Plaintiff's investment, as well as Prestige's involvement as a financial advisor to the

Fund may well indicate, as an admission, the extent of Defendant's actual belief in the

truthfulness of Defendant's representations to Plaintiff or the lack thereof sufficient to

establish Defendant had engaged in "gross, wanton or willful fraud" or "morally culpable

conduct" in Defendant's representations to Plaintiff.  The same is true with respect to

Defendant's and Plaintiff's communications with Stephan.  For example, documents

showing Stephan lacked any realistic theory based on fact or his experience regarding

trading in short and long positions in the stock market for the creation of Stephan's so-

called trading formula or algorithm and Defendant's awareness the algorithm was

unlikely to work especially given Defendant's knowledge of Stephan's indisputable lack

of experience in such matters would also provide support a finding of Defendant's

reckless disregard for the truthfulness of Defendant's representation to Plaintiff

concerning operation of the Fund and Plaintiff's results thereby supporting punitive

damages.  Defendant's communications with Grenda and other Reliance employees

could also contain references constituting inculpatory admissions concerning Stephan's ill-fated algorithm and Defendant's lack of any good faith basis to believe the trading formula as contrived by Stephan had any factual basis in successfully trading long and short positions by the Fund as was known to Defendant and as Defendant represented to Plaintiff.

As such, Defendant's relevancy objections to Plaintiff's Requests Nos. 10-21 are without merit and overruled.

(3)     Rule 34(a)(1).

Fed.R.Civ.P. 34(a) requires a requested party to produce relevant documents that are in the party's "possession, custody, or control."  Under Rule 34(a) a responding party is required "to conduct a reasonable and diligent search for responsive documents."  *Wilson v. Town of Cheektowaga*, 2021 WL 195348, at *3 (W.D.N.Y. Jan. 10, 2021) (quoting *Gainer v. United Automobile Agricultural Implement Workers, (UAW)*, 2016 WL 9455264, at *5 (W.D.N.Y. Mar. 17, 2016)).  Here, Defendant asserts Defendant has diligently searched records in his possession and has produced copies of all responsive documents.  *See* Dkt. 134-1 ¶ 10; 134-3 ¶¶ 5, 10.  Defendant also avers other responsive documents "are property of and remain at Reliance."  Dkt. 134-3 ¶ 6 ("most of the materials requested in this case").  According to Defendant, such documents include "any communications with Mr. Stephan and Mr. Grenda" which are, as Defendant avers, "within the custody and control of Reliance."  *Id.* ¶ 9.  Thus, Defendant asserts he is not in default of his duty to produce responsive documents, as such materials are not in his possession, custody or control.  Defendant is incorrect.

In this case, the record establishes that Defendant is a co-owner of Reliance, a now defunct company,[2] and, as such, has a right to access and produce such documents, constituting a sufficient degree of control for purposes of Rule 34(a)(1) requirements.  It is well-established that "[i]f the producing party has the legal right or the practical ability to obtain the documents, then it [the producing party, here, Defendant] is deemed to have "control," even if the documents are in the possession of a non-party."  *Riddell Sports, Inc. v. Brooks*, 158 F.R.D. 555, 558 (S.D.N.Y. 1994) (citing authorities); *see also Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) "whether a party has a sufficient degree of control over requested documents to constitute a practical ability to obtain the documents is a question of fact."  *Gross,* 304 F.R.D. at 142 (citing *Sigety v. Abrams*, 632 F.2d 969, 974 (2d Cir. 1980) (inferring from undisputed facts that requested documents known to have been within petitioner's control remained in petitioner's control))).  Here, Defendant's opposition acknowledges Defendant was a co-owner of Reliance along with Grenda.  *See* Dkt. 134-1 at 4 ("Walter Grenda [is] an owner of that entity [Reliance]."  Moreover, Defendant also does not dispute Defendant was and remains a co-owner of Reliance and that as such Defendant is entitled to obtain the records in the control and custody of Reliance.  Indeed, Defendant states counsel to Reliance has agreed at Defendant's request to search for and produce the

---

[2]  Defendant does not state Reliance has been dissolved.  Nor does Defendant assert the records sought by Plaintiff are not available.  Dkt. 134-3 ¶ 13 ("By operation of law and per my agreement with Mr. Grenda, the requested materials remain with Reliance.") (underlining added).  *See United States v. Johnson,* 247 F.2d 5, 7 (2d Cir.) (dissolution of corporation did not relieve former president of duty to comply with subpoena for corporate records as N.Y. Stock Corporation Law § 106.5 (now N.Y. Bus. Corporation Law § 1008(a)(7)) requires directors of a dissolved corporation to preserve the corporation's records until their destruction may be sanctioned by a court order, and because no such court order had been entered before subpoena duces tecum was served, dissolution of corporation did not relieve former president of his duty to comply), *cert. denied,* 355 U.S. 867 (1957).  Significantly, N.Y. Bus. Corp. Law § 1008(a)(7) also applies to a limited liability corporation like Reliance.  *See* N.Y. Bus. Corp. Law § 1513.

requested records from Reliance records in counsel's possession supporting a finding Defendant therefore also has the practical ability to obtain the records which Defendant has thus far failed to produce thereby necessitating Plaintiff's motion. *See* Dkt. 134-1 ¶ 15 ("("I [Soehnlein] did reach out to Mr. Makowski [Reliance's counsel] on Jan. 7. I also reached out several times to follow up on the request. Mr. Makowski <u>has assured me that he is working on providing the relevant documents to me</u>."). Defendant also states "We [Soehnlein and Makowski] discussed this matter [Plaintiff's production demands] as recently as March 1, 2022"). Dkt. 134-1 ¶ 15. Thus, as a co-owner of Reliance, Defendant has sufficient control over the documents or the practical ability to obtain them from Reliance's files. *See Riddell*, 158 F.R.D. at 558; *Gross*, 304 F.R.D. at 142. The party resisting discovery production has the burden of showing his resistance is substantially justified. *See In re Flag Telecom Holdings, Ltd. Securities Litig.*, 236 F.R.D. 177, 180-81 (S.D.N.Y. 2006) (former executive of non-party corporation had requisite control over requested documents because he "certainly has the practical ability to obtain the documents"). Based on the record, Defendant has therefore failed to satisfy Defendant's burden. Moreover, Rule 34(a) requires Defendant, not Reliance's attorney, to engage in a reasonable search of Reliance's records for responsive documents. *See Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 529224, at **2-3 (S.D.N.Y. Feb. 17, 2009) (responding party required to make a further search of corporate records for responsive documents and provide affidavit describing actual searches conducted by responding party and the party's counsel to locate and produce responsive documents). Thus, Defendant's attempt to substitute Reliance's attorney's search of Reliance's records for documents responsive to Plaintiff's requests does not

satisfy Defendant's obligation under Rule 34(a)(1) to do so, as such dependence practically assures that some responsive documents will be overlooked.  Thus, Defendant's assertion he has fulfilled his obligation to search for and, if available, produce the documents requested by Plaintiff, including relating to Prestige, the Fund, Grenda and Stephan, that are in his possession and not those in the possession of Reliance, and which Defendant avers remain in Reliance's possession, *see* Dkt. 134-3 ¶ 9, is without merit and Plaintiff's motion should be GRANTED.

4.      Motion for Mediation.

As noted, Defendant requests that the court now order the parties engage in mediation in accordance with the court's ADR Plan.  *See* Dkt. 138.  Despite the court's initial referral to mediation, *see* Dkt. 2, mediation did not occur.  Plaintiff does not oppose this request.  *See* Dkt 140 ¶ 5.  In accordance with the court's ADR Plan Section 2.1B, a District Judge or Magistrate Judge to whom the case has been assigned may refer a pending case to mediation.  Plaintiff, as noted, has no objection to this request.  Accordingly, Defendant's motion requesting the case be referred to mediation at this time in compliance with the court's ADR Plan should be GRANTED.

5.      Plaintiff's Motion to Strike.

In a March 14, 2022 Letter to the court, Plaintiff objects to Defendant's filing of Defendant's Attorney Declaration (Dkt. 136) as a Sur-Reply having been submitted without prior approval as required by Local R.Civ.P. 7(a)(6) and, as such, Defendant's Attorney Declaration as a Sur-Reply should be stricken.  Defendant has not responded to Plaintiff's request.  Based on Plaintiff's objection, Defendant's Sur-Reply (Dkt. 136) should be stricken.

6.    <u>Sanctions</u>.

Plaintiff also requests Plaintiff's expenses pursuant to Fed.R.Civ.P. 37(a)(5)(A) should be awarded.  Dkt. 130.  Defendant opposes Plaintiff's requests, Dkt. 134-1, and, instead, requests Defendant's expenses pursuant to Rule 37(a)(5)(B).  Defendant also requests discovery be extended 60 days.  *See* Dkt. 134-1 at 6.  Plaintiff states Plaintiff has no objections to this request to facilitate Defendant's deposition following completion of document production by Defendant.  *See* Dkt. 130 at 3.  Based on the agreement of the parties, the court will enter an amended Scheduling Order.  The parties shall submit a proposed amended Scheduling Order, including an outside date for the conduct of Defendant's deposition and any other depositions sought by Plaintiff, for the court's consideration, individually or jointly, within <u>10 days</u> of this Decision and Order.

In accordance with Rule 37(a)(5)(A), where a court grants a motion to compel, the court is required to award a plaintiff's expenses, including its reasonable attorney fees, unless defendant's failure to provide the disputed discovery was substantially justified or an award would in the circumstances be otherwise unjust.  Here, the court, for the reasons explained above, finds Defendant's refusal to produce the documents at issue to be without merit and that Plaintiff's motion should be GRANTED.  *See Scott-Iverson v. Independent Health Association, Inc.*, 2016 WL 5928820, at \*2 (W.D.N.Y. Oct. 12, 2016) (under Rule 37(a)(5)(A) substantially justified requires the existence of a genuine dispute or that the refusing party's failure is objectively reasonable).

**CONCLUSION**

Based on the foregoing, Plaintiff's motion (Dkt. 129) is GRANTED; Defendant's Cross-Motion (Dkt. 134) is GRANTED in part, and DENIED, in part; Defendant shall produce the requested documents at issue on Plaintiff's motion <u>within</u> <u>30</u> <u>days</u> of this Decision and Order; Defendant shall show cause <u>within</u> <u>10</u> <u>days</u> why sanctions should not be awarded in accordance with Rule 37(a)(5)(A), including an allocation of responsibility for Plaintiff's motion between counsel and Defendant; Plaintiff's response shall be filed <u>within</u> <u>10</u> <u>days</u> thereafter; Defendant's reply, if any, shall be filed <u>within</u> <u>five</u> <u>days</u>; oral argument shall be at the courts discretion; Defendant's motion for mediation (Dkt. 138) is GRANTED.  The parties shall select a mediator within <u>10</u> <u>days</u> of this Decision and Order filing such stipulation confirming such selection.

SO ORDERED.

_____
    LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dates:  April 22, 2022
        Buffalo, New York